**HARBOR PERFUSION, INC., Appellant,**

v.

**Donald G. FLOYD, Appellee.**

**No. 13–00–679–CV.**

Court of Appeals of Texas, Corpus Christi.

March 29, 2001.

Russell Manning, Hornblower, Manning & Ward, Corpus Christi, for Appellant.

Thomas E. Baker, Demars, Hornblower, Manning & Ward, Corpus Christi, for Appellee.

Before Chief Justice VALDEZ and Justices DORSEY and RODRIGUEZ.

## OPINION

Opinion by Justice RODRIGUEZ.

This is an accelerated, interlocutory appeal from a temporary injunction prohibiting Harbor Perfusion, Inc., (Harbor) from enforcing a covenant not to compete against Donald G. Floyd. *See* TEX.CIV. PRAC. & REM.CODE ANN. § 51.014(a)(4) (Vernon Supp.2001); TEX.R.APP.P. 28.1. Harbor challenges the temporary injunction by four issues. We reverse and remand.

Floyd is a cardiopulmonary clinical perfusionist, which is a person who operates heart and lung machines as well as autotransfusion devices during surgery. In 1985, Floyd and two other perfusionists formed a partnership under the name Harbor Perfusion, Inc. Floyd was a shareholder, director, officer, and employee of Harbor. At the time of Harbor's incorporation, Floyd and Harbor entered into an employment agreement which provided, among other things, that Harbor was entitled to acquire Floyd's stock in Harbor upon his termination of employment. The agreement also included a covenant not to compete, which arose "in the event of (and in connection with) any optional purchase of Employee's stock...." In the event of such a purchase, the covenant provided that the employee shall not, for a period of three years after termination:

> in any area within a 50–mile radius of Corpus Christi, Texas or of San Antonio, Texas, either: (i) engage in the Company's Services businesses, or individually render services as a perfusionist; (ii) become beneficially interest[ed] in any business or entity engaging in the Company's Services business; (iii) become employed or retained by any third party with respect to any Company's Services operations; or (iv) be or become an officer or director of any company engaging in a Company's Services business.

The employment agreement further provided for payment of a "termination benefit" upon termination of employment. The payments were to continue for a period of three years after employment provided

Floyd did not violate the covenant not to compete.

Floyd resigned from Harbor's employment in April of 2000. Thereafter, Floyd filed suit against Harbor, seeking, *inter alia*, to enjoin Harbor from enforcing the covenant not to compete and a judgment declaring the covenant unenforceable. Harbor counterclaimed, requesting a permanent injunction enforcing the covenant not to compete. After a hearing, the court granted a temporary injunction enjoining Harbor from the following conduct:

[ (1) ] enforcing by judicial means, other than a trial on the merits in the above styled and numbered cause, the restrictive covenants contained in paragraphs 7 and 8 of that certain Employment Agreement dated May 10, 1996;

(2) interfering extrajudicially with the performance of perfusion services by Donald G. Floyd, either individually or in the course and scope of his employment for a third party, including Floyd's solicitation of business from any client whom Floyd served while affiliated with Harbor Perfusion; and

(3) committing any acts calculated to cause damage to Donald G. Floyd in his performance of perfusion services or any business connected with those perfusion services.

In its order, the trial court found that Harbor was likely to attempt to enforce the covenant not to compete and interfere with Floyd's performance of his occupation, that Floyd would likely succeed on the merits in his suit, and that Floyd would suffer probable harm.

By its first, third, and fourth issues Harbor contends that the trial court abused its discretion in granting the temporary injunction.

■■■ The standard of review for the grant or denial of a temporary injunction

is abuse of discretion. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993); *Tenet Health Ltd. v. Zamora*, 13 S.W.3d 464, 468 (Tex.App.—Corpus Christi 2000, pet dism'd w.o.j.). A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principals, or misapplies the law to the established facts of the case. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). There is no abuse of discretion where the court bases its decision on conflicting evidence. *General Tire, Inc. v. Kepple*, 970 S.W.2d 520, 526 (Tex.1998); *Zamora*, 13 S.W.3d at 468. We do not give any particular deference to legal conclusions of the trial court and apply a *de novo* standard of review when the issue turns on a pure question of law. *Zamora*, 13 S.W.3d at 468; *see also State v. Heal*, 917 S.W.2d 6, 9 (Tex.1996).

■■■ To be entitled to a temporary injunction, a plaintiff must show (1) that a wrongful act occurred (i.e., that the plaintiff has a cause of action against the defendant); (2) a probable right of recovery; and (3) a probable injury in the interim. *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex.1993); *Zamora*, 13 S.W.3d at 468; *Castaneda v. Gonzalez*, 985 S.W.2d 500, 502 (Tex.App.—Corpus Christi 1998, no pet.). The probable injury element requires a showing that the harm is imminent, the injury would be irreparable, and that the plaintiff has no other adequate legal remedy. *Zamora*, 13 S.W.3d at 468.

■■■ Although an injunction is a preventive device, injunctive relief is improper where the party seeking the injunction has mere fear or apprehension of the possibility of injury. *Frey v. DeCordova Bend Estates Owners Ass'n*, 647 S.W.2d 246, 248 (Tex.1983). A prerequisite for injunctive relief is actual injury, the threat of imminent harm, or another's demonstrable in-

tent to do that for which injunctive relief is sought. *Tri–State Pipe and Equipment, Inc. v. Southern County Mut. Ins. Co.,* 8 S.W.3d 394, 401 (Tex.App.—Texarkana 1999, no pet).

▮ During the hearing on the temporary injunction, counsel for Harbor questioned Floyd regarding how Harbor had interfered with the performance of his occupation. Floyd responded he did not have any contracts and that Harbor dominated the contracts. Moreover, "[o]ne of their board members informed [him] that they will aggressively defend their business in Corpus Christi. . . ." He also stated, "[w]ithout specifics, I think there's some implied—some implications from the past, that Harbor . . . has previously sued employees, former employees, for competing."

Floyd admitted he was trying to maintain relationships with the doctors for whom he had performed services and that he would be available if they would like him to come back and work. Some of the doctors had told him they wanted him to come back to work, but he declined to do so because he was "concerned about the [covenant not to compete] and the employment agreement." Floyd stated he was also unable to write contracts under the covenant not to compete because "[t]he contracts usually in the hospital prevent them from hiring a former employee." Floyd had not offered his services to any physicians who refused his offers. Some of the individuals with whom Floyd spoke at the various hospitals indicated they had concerns that he was under a covenant not to compete. When asked if Harbor did

anything to interfere with his discussions at Spohn Hospital, Floyd stated that to his knowledge, Harbor did not.

▮ Although a trial court does not abuse its discretion when it bases its decision on conflicting evidence, that evidence must reasonably support the trial court's decision. *See Universal Health Services v. Thompson,* 24 S.W.3d 570, 576 (Tex.App.—Austin 2000, no pet. h.); *Zamora,* 13 S.W.3d at 468. Floyd's testimony demonstrates mere fear or apprehension of the possibility of injury rather than imminent harm. Floyd presented no evidence that Harbor interfered with the performance of Floyd's occupation or that it intended to do so.[1] *See Markel v. World Flight, Inc.,* 938 S.W.2d 74, 79 (Tex.App.—San Antonio 1996, no writ) (holding that pleadings alone will not support entry of a temporary injunction where record contains absolutely no testimony or any type of evidence to prove imminent or irreparable harm). Moreover, Harbor's mere filing of a counter-claim for a permanent injunction seeking to enforce the covenant not to compete after a trial on the merits does not amount to imminent harm. Accordingly, Floyd failed to establish the probable injury element and the trial court abused its discretion in granting the temporary injunction.

▮ Even if Floyd had met his burden by showing imminent harm, the trial court abused its discretion in entering the portion of the injunction proscribing Harbor from enforcing the covenant by judicial means. This portion of the injunction is an anti-suit injunction, which is appropriate in four instances: 1) to address a threat to the court's jurisdiction; 2) to

1. In the appendix to his appellate brief, Floyd attached a letter from Harbor's counsel to Floyd's counsel explaining that because Floyd had violated the covenant not to compete, Harbor would not pay further termination benefits. We are unable to consider this let-

ter, however, as it does not appear in the appellate record. *See Sabine Offshore Serv., Inc. v. City of Port Arthur,* 595 S.W.2d 840, 841 (Tex.1979); *Sewell v. Adams,* 854 S.W.2d 257, 259 (Tex.App.—Houston [14th Dist.] 1993, no writ).

prevent the evasion of important public policy; 3) to prevent a multiplicity of suits; or 4) to protect a party from vexatious or harassing litigation. *Golden Rule Ins. Co. v. Harper,* 925 S.W.2d 649, 651 (Tex.1996). The party seeking the injunction has the burden of showing that a clear equity demands the injunction. *Christensen v. Integrity Ins. Co.,* 719 S.W.2d 161, 163 (Tex. 1986); *Tri–State Pipe and Equipment, Inc. v. Southern County Mut. Ins. Co.,* 8 S.W.3d 394, 401(Tex.App.—Texarkana 1999, no pet.).

In the present case, Floyd failed to provide evidence to support any of the four bases for an anti-suit injunction. Accordingly, even if the requisite elements of a temporary injunction had been satisfied, the trial court abused its discretion by enjoining Harbor from enforcing the covenant by judicial means, other than a trial on the merits in the instant cause.

 Furthermore, the portion of the order enjoining Harbor from extra-judicial activity is over broad. "[A] trial court abuses its discretion by entering an 'overly-broad' injunction which grants 'more relief' than a plaintiff is entitled to by enjoining a defendant from conducting lawful activities or from exercising legal rights." *Fairfield Estates L.P. v. Griffin,* 986 S.W.2d 719, 723 (Tex.App.—Eastland 1999, no pet.) (citing The *Republican Party of Texas v. Dietz,* 940 S.W.2d 86, 93 (Tex. 1997); *Villalobos v. Holguin,* 146 Tex. 474, 208 S.W.2d 871, 875 (Tex.1948); *Ghidoni v. Stone Oak, Inc.,* 966 S.W.2d 573, 583 (Tex.App.—San Antonio 1998, no writ)).

Here, the trial court's order enjoined Harbor from interfering with Floyd's performance of perfusion services, "including Floyd's solicitation of business from any client whom Floyd served while affiliated with Harbor." It further enjoined Harbor from "committing any acts calculated to cause damage to Donald G. Floyd in his performance of perfusion services or any business connected with those perfusion services." These prohibitions go beyond preventing Harbor from enforcing the covenant not to compete. By prohibiting Harbor from committing an act calculated to damage Floyd's business as a perfusionist or from interfering with Floyd's performance of perfusion services, the injunction arguably restricts Harbor from engaging in free-market competition. Thus, even if Floyd had been entitled to a temporary injunction, the trial court abused its discretion by entering the overly-broad injunction.

 Moreover, where the injunctive relief granted exceeds the relief requested by the applicant in the petition, the trial court exceeds its jurisdiction. *RP&R, Inc. v. Territo,* 32 S.W.3d 396, 401 (Tex.App.— Houston [14th Dist.] 2000, no pet.) (citing *Fairfield v. Stonehenge Ass'n Co.,* 678 S.W.2d 608, 611 (Tex.App.—Houston [14th Dist.] 1984, no writ)). In this case, Floyd's petition for temporary injunction requested only that Harbor be enjoined from enforcing the covenant not to compete. Thus, the trial court exceeded its jurisdiction by entering any relief beyond enjoining Harbor from enforcing the covenant not to compete. Harbor's first, third, and fourth issues are sustained. We decline to address Harbor's second issue as it is not dispositive to this appeal. Tex .R.App.P. 47.1.

The trial court's temporary injunction order is REVERSED, and the cause is REMANDED to the trial court for further proceedings consistent with this opinion.