

**NUMBER 13-07-364-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**SHORELINE GAS, INC.,**         **Appellant,**

**v.**

**CHUCK MCGAUGHEY,**         **Appellee.**

---

**On appeal from the County Court at Law No. 2
of Nueces County, Texas**

---

**MEMORANDUM OPINION**

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Justice Garza**

Appellant Shoreline Gas, Inc. ("Shoreline") appeals from the denial of its application for a temporary injunction against appellee Chuck McGaughey, its former employee, under the non-competition, non-solicitation, and non-disclosure provisions of a Confidentiality and Non-Competition Agreement ("Agreement") signed by McGaughey. The trial court found these provisions to be invalid and unenforceable. This accelerated interlocutory appeal ensued. *See* TEX. R. APP. P. 28.1. By four issues, Shoreline argues that the trial court abused its discretion in denying its application for temporary injunctive relief. We affirm the

judgment of the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Shoreline is in the natural gas marketing business. It purchases gas from gas producers and then sells or markets that gas to other entities. McGaughey was hired by Shoreline in 2002 as a gas supply representative and was expected to solicit gas producers, purchase gas from such gas producers, negotiate contracts, and maintain and expand Shoreline's relationships with new and existing producers. It is undisputed that McGaughey was an at-will employee. As a condition of his hiring, McGaughey was required to sign the Agreement, which contained non-competition, non-solicitation, and non-disclosure covenants. Although McGaughey disputes the circumstances under which he signed the Agreement,[1] it is undisputed that he signed the Agreement immediately upon commencing his employment with Shoreline.

Shoreline abruptly terminated McGaughey's employment on April 25, 2007. Shortly thereafter, Shoreline brought suit against McGaughey seeking a declaratory judgment that the non-compete, non-solicitation, and non-disclosure provisions of the Agreement are enforceable, and seeking temporary and permanent injunctive relief. Shoreline also served McGaughey with a temporary restraining order requiring him to abide by those provisions. McGaughey filed a first amended original answer denying Shoreline's allegations generally, and pleading specifically waiver and estoppel, collateral estoppel, failure of Shoreline to verify its petition for injunction, and failure of Shoreline to allege with specificity a probable injury.

After temporary injunction hearings on May 7, 22, and 23, 2007, the trial court denied Shoreline's request for temporary injunction. Specifically, the trial court's order of June 6, 2007 stated as follows:

---

[1] McGaughey claims that when he told Rian Grisemer, president of Shoreline, that he would not sign the Agreement, Grisemer told him "if things don't work out you can go back to work for a larger company. That won't be a problem." Shoreline disputes this claim.

ORDER DENYING INJUNCTIVE RELIEF

On May 7, 2007, the court called for hearing the motion of plaintiff Shoreline Gas, Inc., for injunctive relief. All parties appeared and announced ready. Having heard the evidence and argument of counsel, the court finds that the [sic] all of the provisions of the Confidentiality and Non Competition Agreement signed by defendant Chuck McGaughey which limit in any way defendant's right to compete with plaintiff or to solicit plaintiff's customers are unenforceable.

It is ORDERED that all injunctive relief requested by plaintiff, including that relief based upon paragraphs 4 (Non-disclosure or Use of Trade Secrets), 5 (Non-disclosure or Use of Confidential Information), 7 (Non competition), and 8 (Non-solicitation of Accounts) of the Confidentiality and Non Competition Agreement, is DENIED.

Neither party requested, nor did the trial court supply, findings of fact or conclusions of law. Following the court's denial of its request for a temporary injunction, Shoreline filed its notice of interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (Vernon Supp. 2007). Shoreline contends that the trial court abused its discretion by denying its application for temporary injunction. Specifically, Shoreline argues that the trial court erred by: (1) finding the non-compete covenant of the Agreement to be unenforceable; (2) finding the non-solicitation covenant of the Agreement to be unenforceable; (3) finding the non-disclosure covenant of the Agreement to be unenforceable; and (4) refusing to reform the geographical area, scope of activity, and time of the various covenants of the Agreement and to enforce them as reformed pursuant to section 15.51(c) of the Texas Business and Commerce Code. *See* TEX. BUS. & COM. CODE ANN. § 15.51(c) (Vernon Supp. 2007).

## II. STANDARD OF REVIEW

The decision to grant or deny a temporary injunction lies in the sound discretion of the trial court, and the court's ruling is subject to reversal only for a clear abuse of discretion. *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993). In reviewing an order granting or denying a temporary injunction, we must view the evidence in the light most favorable to the trial court's decision, indulging every reasonable inference in its favor. *See Diesel Injection Sales & Serv., Inc. v. Gonzalez*, 631 S.W.2d 193, 195 (Tex. App.–Corpus

Christi 1982, no writ). However, a trial court abuses its discretion in denying a temporary injunction when it misapplies the law to the established facts. *See Loye v. Travelhost, Inc.*, 156 S.W.3d 615, 619 (Tex. App.–Dallas 2004, no pet.) (op. on reh'g); *see also State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975).

It is well established that when no findings of fact or conclusions of law are requested or filed, we must uphold the trial court's judgment on any legal theory supported by the record. *See, e.g., Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Seaman v. Seaman*, 425 S.W.2d 339, 341 (Tex. 1968). Here, the trial court did include in its order a finding that the non-compete, non-solicitation, and non-disclosure provisions of the Agreement are "invalid and unenforceable." Shoreline argues that the trial court, with this statement, has arrived at a conclusion of law on the final issue of the enforceability of those provisions, and that our review is therefore limited to this conclusion. We disagree. Even if we were to assume that this statement was in fact a conclusion of law, such conclusions, although "helpful" in our review of an interlocutory order, are not binding in our determination of whether a trial court has abused its discretion. *See Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 884 (Tex. App.–Dallas 2003, no pet.); *see also IKB Indus. (Nigeria), Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997); *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex. 1992). Accordingly, we use the standard of review applicable to cases where no findings of fact or conclusions of law have been requested or filed. *See Davis*, 571 S.W.2d at 862.

Moreover, despite the breadth of the trial court's language in declaring the contractual provisions unenforceable, the ultimate issue of enforceability was not before the trial court at the temporary injunction hearing, and it is not before this court on appeal. *See Tom James*, 109 S.W.3d at 884-85. That is because the trial court's refusal to grant a temporary injunction was based only on the record produced at the temporary injunction hearing, not a full trial on the merits. *Id.* at 885. We will not assume that the evidence taken at a preliminary hearing will be the same as the evidence developed at a trial on the

4

merits, and so we do not reach the ultimate issue of the enforceability of the non-compete, non-solicitation, and non-disclosure provisions. *Id.* We will only address the enforceability of those provisions insofar as its affects our analysis of whether the elements required for issuance of a temporary injunction have been satisfied. *See Tom James*, 109 S.W.3d at 883; *see also Diesel Injection Sales & Servs., Inc. v. Renfro*, 656 S.W.2d 568, 571 (Tex. App.–Corpus Christi 1983, writ ref'd n.r.e.) (prior appeals of denial of temporary injunction did not determine reasonableness of non-compete covenant because review was restricted to abuse of discretion; review in appeal from trial on merits is not so restricted).

### III. DISCUSSION

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *City of McAllen v. McAllen Police Officers Union*, 221 S.W.3d 885, 893 (Tex. App.–Corpus Christi 2007, pet. denied). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Butnaru*, 84 S.W.3d at 204. To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* The party seeking the injunction bears the burden of proving each of these elements. *City of McAllen*, 221 S.W.3d at 893.

### A. Cause of Action

To satisfy the first element of the temporary injunction test, an applicant needs only to plead a cognizable cause of action, and does not need to show a definite right to the final relief sought. *See Walling*, 863 S.W.2d at 58 ("the issue in determining whether an applicant has met the first qualification for a temporary writ of injunction is not whether the prayer seeking the writ and the ultimate cause of action are related, but whether the applicant has a cause of action at all."); *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968) (holding that "an applicant is not required to establish that he will prevail on final trial; he needs only to plead a cause of action and to show a probable right on final

5

trial to the relief he seeks and probable injury in the interim.")

Shoreline, in its original petition, sought a final remedy of declaratory relief under chapter 37 of the Texas Civil Practice and Remedies Code as well as permanent injunctive relief. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001-.011 (Vernon Supp. 2007). These claims are cognizable under Texas law. We therefore conclude that Shoreline met the first requirement to obtain a temporary injunction. *See Butnaru*, 84 S.W.3d at 204.

### B. Probable Right to Relief

The second element required for the issuance of a temporary injunction is a showing of a probable right to relief upon a final trial on the merits. When the final relief sought is injunctive in nature, the applicant must show a probable right on final hearing to a permanent injunction.[2] *See Sun Oil Co.*, 424 S.W.2d at 218. Shoreline has requested final relief in the form of both injunctive and declaratory relief. Thus, to determine whether Shoreline has a probable right to final relief, it is necessary for us to examine the enforceability of the non-compete, non-solicitation, and non-disclosure provisions of the Agreement.

### 1. Enforceability of the Covenant Not To Compete

The non-compete covenant executed by Shoreline and McGaughey stated as follows:

> 7. Non competition. In recognition of the fact that the Company is engaged in a business involving Confidential Information constituting trade secrets and personal relationships with [a]ccounts and prospective accounts and prospective business advantages, the success of which business is in large part due to the exclusive retention of such Confidential Information and continuation of such personal relationships with such Accounts, and for the consideration recited above, I covenant and agree as follows: during my employment with the Company, and for a period of two (2) years following the date that I cease to be employed with the Company for any reason, regardless of whether the cessation of my employment is voluntary or with or without cause, I will not compete in any way with the business of the

---

[2] An applicant for permanent injunctive relief must establish the following four elements: (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law. *Montfort v. Trek Res., Inc.*, 198 S.W.3d 344, 350 (Tex. App.–Eastland 2006, no pet.).

Company anywhere within the geographical area specified in Exhibit "A" (the "Area"), on behalf of myself or any other person or entity, or have a monetary interest in any person, firm, corporation or entity that engages in business similar to the business of the Company. For the purposes of this paragraph and this covenant, the term "compete in any way with the business of the Company" shall mean that I shall not, directly or indirectly, or on behalf of any person or entity, call on, contact, solicit, handle business for, or perform or render any services related to the buying, selling or marketing of natural gas or related or derived hydrocarbons or hydrocarbon by-products to any person, firm, corporation or other entity that is or was a former Account, client, customer, or active prospect for business for the Company, or business opportunity of the Company, during my employment and during the twelve (12) months immediately prior to the date of termination or cessation of my employment with the Company as evidenced by the books and records of the Company.

Covenants not to compete are generally considered restraints of trade and are disfavored in law. *See* TEX. BUS. & COM. CODE ANN. § 15.05(a) (Vernon Supp. 2007) ("Every contract, combination, or conspiracy in restraint of trade or commerce is unlawful."); *see also Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d 830, 832 (Tex. 1991). However, the Covenants Not to Compete Act (the "Act") sets forth certain circumstances under which such covenants are enforceable. *See* TEX. BUS. & COM. CODE ANN. §§ 15.50-.52 (Vernon Supp. 2007). The Act provides in relevant part that:

> Notwithstanding Section 15.05 of this code, and subject to any applicable provision of Subsection (b), a covenant not to compete is enforceable if it is **ancillary to or part of an otherwise enforceable agreement at the time the agreement is made** to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

*Id.* § 15.50(a) (emphasis added).

Therefore, under the Act, we must first determine whether the parties entered into an "otherwise enforceable agreement" and we must then determine whether the non-compete covenant was "ancillary to or part of" that agreement. *See id.* If the answer to both inquiries is affirmative, the non-compete covenant is enforceable as a matter of law to the extent that it is reasonably restricted as to time, geographical area, and scope of activity. *See id.*

7

### i. "Otherwise Enforceable Agreement"

An employer and an at-will employee cannot, by definition, have an "otherwise enforceable agreement" pertaining to the duration of the employee's employment. However, "at-will employment does *not* preclude the formation of other contracts between employer and employee." *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 644 (Tex. 1994) (emphasis in original). In other words, an agreement must be supported by consideration to be deemed "otherwise enforceable," but in the context of at-will employment, that consideration cannot be dependent on a period of continued employment. *Id.* Such a promise would be illusory in that it would fail to bind the promisor, who always retains the option of discontinuing employment in lieu of performance. *Id.* at 645 (citing *E. Line & Red River R.R. Co v. Scott*, 10 S.W. 99, 102 (Tex. 1888) (noting that in at-will employment, "it is no breach of contract to refuse to receive further services.")).

However, an "otherwise enforceable agreement" *can* emanate from at-will employment so long as the consideration for any promise is not illusory. *See Light*, 883 S.W.2d at 645. Even if one promise is illusory, a unilateral contract may still be formed—the non-illusory promise can serve as an offer, which the promisor who made the illusory promise can accept by performance. *Id.* at 645 n.6. The fact that the employer was not bound to perform because he could have fired the employee is irrelevant; if he has performed, he has accepted the employee's offer and created a binding unilateral contract. *Id.*

The majority opinion in *Light* contained a footnote suggesting that such a unilateral contract might not be sufficient to support a non-compete covenant, because it is not an "otherwise enforceable agreement *at the time the agreement is made*" pursuant to section 15.50(a). 883 S.W.2d at 645 n.6 (citing TEX. BUS. & COM. CODE ANN. § 15.50(a)) (emphasis added). Rather, it would only become enforceable upon the performance of the employer, which would occur subsequent to the actual execution of the agreement. *See*

8

*id.* However, this suggestion was clearly rejected by the Texas Supreme Court in *Alex Sheshunoff Management Services, L.P. v. Johnson,* 209 S.W.3d 644, 646 (Tex. 2006). In *Sheshunoff*, the court examined the enforceability of a non-compete covenant under which the employer had no corresponding enforceable obligation at the time the agreement was made—instead, the employer's obligations were only triggered by its performance some time after the execution of the agreement. *Id.* at 650-51. Relying on the footnote included in *Light*, the employee argued that the non-compete covenant was invalid because there was no "otherwise enforceable agreement at the time the agreement [was] made" as required by section 15.50(a). *Id.* at 650; *see Light* at 645 n.6; TEX. BUS. & COM. CODE ANN. § 15.50(a). The supreme court disagreed with the employee's interpretation of the statute:

> Revisiting the issue of what the clause "at the time the agreement is made" in the Act means, we conclude that we must disagree with *Light*'s view that a unilateral contract can never meet the requirements of the Act because such a contract is not immediately enforceable when made. Section 15.50 states that "a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made . . . ." Simply reading the text, the clause "at the time the agreement is made" can modify either "otherwise enforceable agreement" or "ancillary to or part of." . . . We now conclude, contrary to *Light*, that the covenant need only be "ancillary to or part of" the agreement at the time the agreement was made. Accordingly, a unilateral contract formed when the employer performs a promise that was illusory when made can satisfy the requirements of the Act.

*Sheshunoff*, 209 S.W.3d at 651.

The Agreement executed by Shoreline and McGaughey is similar in all material aspects to the contract considered in *Sheshunoff*. *See id.* As in *Sheshunoff*, the employment relationship here was at-will, and the employee promised not to disclose the employer's confidential information. *See id.* McGaughey's promise not to disclose Shoreline's confidential information, though not enforceable when made, constituted an offer for a unilateral contract which Shoreline had the option to accept. Shoreline accepted McGaughey's offer by performing—that is, by supplying McGaughey with confidential

9

information—and so a unilateral contract was formed under which McGaughey became bound by his promise not to disclose that information. *See Light*, 883 S.W.2d at 645 n.6. Under *Sheshunoff*, such a unilateral contract constitutes an "otherwise enforceable agreement" sufficient to support an accompanying non-compete covenant. *See Sheshunoff*, 209 S.W.3d at 651; Tex. Bus. & Com. Code Ann. § 15.50(a).

McGaughey denies that he was given confidential information during the course of his employment, and claims that his obligation not to disclose such information was therefore never triggered. We find this claim to be without merit. Rian Grisemer, president of Shoreline, testified at the temporary injunction hearing that "[i]mmediately upon employment, [McGaughey] was provided access to all of our files and all information regarding our accounts, pricing, and customer needs, and references, all data we have in our office." Grisemer further testified that:

> Over the last . . . 16 years, we have accumulated notes that relate to producers that we deal with specifically, accounts that Mr. McGaughey managed in our office. We call these working files. We have an ACT database where we enter specific information about conversations we have with producers. We have spreadsheets where . . . McGaughey would review his commissions earned off of each of these accounts showing exact dollar margins off of each and every account that he managed for the company. We had producer files that contained all of the contract specifics and the contracts themselves. We had market pricing which Mr. McGaughey played a role in, too, as far as selling gas to our markets and at what price that gas was. He not only bought gas, but he also marketed gas on some of these accounts. So, he had access to—and had to use to perform his job[—]all of this information.

McGaughey is correct in his assertion that much of the information that he was provided was publicly available. For example, the names and addresses of natural gas producers is a matter of public record in Texas. However, the evidence adduced at the temporary injunction hearing established that McGaughey was provided with margin and pricing information, as well as notes compiled by Shoreline's employees and supplier histories. None of this information is publicly available, and the dissemination of any of this

information would have damaged Shoreline's business.[3]  Using the terminology of *Light* and *Sheshunoff*, Shoreline accepted McGaughey's offer to not disclose confidential information by providing McGaughey with access to these pieces of information. *See Sheshunoff*, 209 S.W.3d at 651.

We find, based on the evidence adduced at the temporary injunction hearing, that there was an "otherwise enforceable agreement" as required by section 15.50(a).  *See* TEX. BUS. & COM. CODE ANN. § 15.50(a).  That the "otherwise enforceable agreement" did not become enforceable until some time after the Agreement was executed is immaterial. *See Sheshunoff*, 209 S.W.3d at 651.  Our attention next turns to whether the non-compete covenant was "ancillary to or part of" the "otherwise enforceable agreement."

**ii. "Ancillary To Or Part Of"**

In order for a non-compete covenant to be "ancillary to or part of" the otherwise enforceable agreement, two conditions must be met:  (1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and (2) the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement.  *Sheshunoff*, 209 S.W.3d at 648-49; *Light*, 883 S.W.2d at 647.  To satisfy this test, the "otherwise enforceable agreement" must give rise to an "interest worthy of

---

[3] We note that, although this information provided to McGaughey was considered "confidential information" and "trade secrets" under the definitions provided in the Agreement, this does not mean that they were in fact confidential or trade secrets.  In actuality, the definitions provided in the Agreement were overly broad and included pieces of information that are publicly available, such as the names and addresses of gas producers.

It is nevertheless apparent from our review of the record that much of the information provided by Shoreline to McGaughey in the course of his employment—such as certain pricing information, profit margin information and supplier history—was in fact confidential and met the definition of trade secret as provided by the Texas Supreme Court.  *See In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003) (orig. proceeding) (defining a trade secret as "any formula, pattern or device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors, who do not know or use it.").  Moreover, this information did not lose its nature as trade secrets because Shoreline never instructed or approved of the dissemination of such information.  *See CRC-Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 266 (Tex. App.–Houston [1st Dist.] 1996, no writ) (stating that "[i]nformation otherwise qualifying as a trade secret may lose its 'secret' status when disclosed to others with the employer's blessing").

11

protection" by a covenant not to compete. *Sheshunoff*, 209 S.W.3d at 648-49. Examples of such legitimate, protectable interests include business goodwill, trade secrets, and other confidential or proprietary information. *Id.*

In *Light*, the court identified three promises that were not illusory and therefore were capable of serving as consideration for an "otherwise enforceable agreement." Those promises were: (1) the employer's promise to provide "initial . . . specialized training" to the employee;[4] (2) the employee's promise to provide 14 days notice to the employer to terminate employment; and (3) the employee's promise to provide an inventory of all employer-owned property upon termination. 883 S.W.2d at 645-46. Nevertheless, the court ruled that the non-compete covenant that accompanied these promises was unenforceable because "[w]hile [the employer's] consideration (the promise to train) might involve confidential or proprietary information, the covenant not to compete is not designed to enforce any of [the employee's] return promises in the otherwise enforceable agreement." *Id.* at 647. As such, the covenant was not "ancillary to or part of" an otherwise enforceable agreement under the two-prong test and so was unenforceable under the Act. *See* Tex. Bus. & Com. Code Ann. § 15.50(a).

On the other hand, the non-compete covenant in *Sheshunoff* was found to be enforceable. 209 S.W.3d at 657. That is because, unlike in *Light*, the employee in *Sheshunoff* made a promise not to disclose the company's confidential information. *Id.* at 649. Although that promise was unenforceable when the agreement was signed, it became enforceable as soon as the employer provided confidential information to the employee, and therefore became the "otherwise enforceable agreement" as required under the statute. *See* Tex. Bus. & Com. Code Ann. § 15.50(a). Moreover, this newly enforceable agreement gave rise to an "interest worthy of protection" by a non-compete

---

[4] The employer obligation to provide initial training in *Light* did not depend on whether the employee was still employed. *See Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 646 (Tex. 1994) ("Even if [the employee] had resigned or been fired after this agreement was executed, [the employer] would still have been required to provide the initial training.").

12

covenant because it protected "confidential or proprietary information." *Sheshunoff*, 209 S.W.3d at 657; *Light*, 883 S.W.2d at 647; *see DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 682 (Tex. 1990) (stating that confidential information is an example of an "interest worthy of protection" by a covenant not to compete).

In the instant case, McGaughey, like the employer in *Sheshunoff*, made an express promise not to disclose his employer's confidential information. 209 S.W.3d at 647. The Agreement's non-disclosure provisions became enforceable immediately upon the provision of confidential information by Shoreline to McGaughey, and this "otherwise enforceable agreement" directly gave rise to an "interest worthy of protection" by the non-compete covenant. As such, the two-prong test elucidated in *Light* and *Sheshunoff* is satisfied. *See Sheshunoff*, 209 S.W.3d at 649; *Light*, 883 S.W.2d at 647.[5]

McGaughey argues that his Agreement is distinguishable from the employment contract considered in *Sheshunoff* in that the latter contained a provision requiring the employer to give the employee notice of termination (unless the termination stemmed from employee misconduct) or to pay a specified fee. 209 S.W.3d at 646. However, this difference is immaterial to our analysis. A covenant not to compete is not designed to enforce a notice provision. *Id.* at 650; *Light*, 883 S.W.2d at 647 n.15. As such, the notice provision in *Sheshunoff* could not support a non-compete covenant under the second prong of the test.[6]

We conclude, based on the evidence adduced at the temporary injunction hearing, that the non-compete covenant was "ancillary to or part of an otherwise enforceable

---

[5] McGaughey notes that, unlike in the present case, the *Sheshunoff* employment contract required the employer to provide to the employee with "access to certain confidential and proprietary information and materials belonging to Employer. . . ." *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 647 (Tex. 2006). This promise was illusory, however, because the employer could avoid performance simply by terminating employment. Further, this promise was not of the type that could be considered an offer for a unilateral contract that could be accepted by the performance of the promisee. Therefore, it could not have formed the basis of an "otherwise enforceable agreement" capable of sustaining a non-compete covenant. *See id.* at 650.

[6] "[Employer's] non-illusory promise to give at least two week's notice before terminating [employee] does not give rise to its interest in restraining [employee] from competing." *Sheshunoff*, 209 S.W.3d at 650.

agreement" as required by the Act. *See* Tex. Bus. & Com. Code Ann. § 15.50(a). Shoreline therefore established a probable right to relief on the merits with respect to the non-compete covenant. *See Butnaru*, 84 S.W.3d at 204.

**2. Enforceability of the Non-Solicitation Agreement**

The non-solicitation provisions of the Agreement stated as follows:

8. Non solicitation of Accounts. I covenant and agree that during my employment with the Company and for a period of three (3) years following the date that, for any reason, I ceased to be employed by the Company anywhere within the Area, I shall not, except as specifically authorized by the Company in writing, any where [sic] within the Area, call on, contact or solicit, directly or indirectly, any Account or prospective Account of the Company with whom I have had Substantial Contact during my last twelve (12) months of employment with the Company, for the purpose of buying, selling, developing, marketing or promoting natural gas or related or derived hydrocarbons or hydrocarbon by-products.

9. Non solicitation of Employees. I covenant and agree that during the course of my employment with the Company and for a period of one (1) year immediately thereafter, I will not except as specifically authorized by the Company in writing, call upon, solicit, recruit, or assist others in recruiting or solicitation, any officer, employee, consultant or agent of the Company to leave the employ of, or terminate their association with, the Company for any reason.

The Act does not, on its face, apply to non-solicitation agreements. *See* Tex. Bus. & Com. Code Ann. §§ 15.50-.52. Shoreline urges us to infer from this that non-solicitation clauses should be treated differently than non-compete covenants, citing *Rugen v. Interactive Business Systems, Inc.*, 864 S.W.2d 548 (Tex. App.–Dallas 1993, no writ), to support its argument. In *Rugen*, the trial court found a non-compete agreement to be unenforceable, yet it nevertheless granted a temporary injunction enjoining the employee from soliciting or transacting business with the employer's customers because it found that the employer's confidential information was entitled to protection. *Id.* at 550. The Dallas Court of Appeals affirmed the judgment, finding that the trial court did not abuse its discretion in ordering the temporary injunction despite finding the non-compete covenant to be unenforceable. *Id.* at 553. Despite Shoreline's claims, however, the *Rugen* court did

14

not treat a non-solicitation clause differently from a non-compete covenant. In fact, the parties in *Rugen* did not enter into a separate non-solicitation agreement; the only contractual provision at issue was a non-compete covenant. *Id.* at 550. Shoreline's claim that non-solicitation agreements should be treated differently from non-compete covenants is not persuasive.

Instead, non-solicitation agreements are subject to the same analysis as covenants not to compete. *See Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 600 (Tex. App.–Amarillo 1995, no writ) (stating that "other than the moniker assigned it, nothing truly differentiates the [non-solicitation] promise at bar from a covenant not to compete"). The purpose and effect of a non-solicitation agreement parallel those inherent in a non-compete covenant. *Id.* at 599. Both contain geographic and durational parameters, and both effectively restrict competition. *Id.* at 599-600; *see* TEX. BUS. & COM. CODE ANN. § 15.05(a). A non-solicitation agreement is sufficiently analogous to a covenant not to compete such that the provisions of the Act must apply fully to such agreements. *See* TEX. BUS. & COM. CODE ANN. § 15.50(a).

Therefore, in accordance with our analysis above with respect to the non-compete covenant, we conclude that Shoreline established a probable right to relief with respect to the non-solicitation agreement. *See Butnaru*, 84 S.W.3d at 204.

**3. Enforceability of the Non-Disclosure Agreement**

The non-disclosure provisions of the Agreement stated as follows:

4. Nondisclosure or Use of Trade Secrets. During the course of my employment with the Company and for so long thereafter as the pertinent information or documentation remains trade secrets of the Company, I will not, directly or indirectly, use, disclose or disseminate to any other person, organization or entity, or otherwise employ, any trade secrets of the Company (whether or not such trade secrets are in written or tangible form), except as specifically authorized in writing by the Company.

5. Nondisclosure or Use of Confidential Information. During the course of my employment with the Company and thereafter, I will not, except

15

as specifically authorized by the Company in writing, directly or indirectly, (i) use for my own gain, or (ii) disclose or disseminate to any other person, organization or entity, or otherwise employ, any Confidential Information, unless such Confidential Information is required to be produced by myself in response to a valid order, summons, or subpoena issued by a court or administrative agency of competent jurisdiction. In the event I receive any order, summons, or subpoena issued by a court or administrative agency to produce Confidential Information, I will promptly notify the Company of such subpoena, summons or order to provide the Company the opportunity to protect its interests in such Confidential Information.

Non-disclosure agreements are different than non-compete covenants. *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 663 (Tex. App.–Dallas 1992, no writ) (affirming the trial court's summary judgment enforcing a non-disclosure clause despite being accompanied by an unenforceable non-compete covenant)*; see also CRC-Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 265 (Tex. App.–Houston [1st Dist.] 1996, no writ) (affirming the trial court's denial of temporary injunction enforcing non-disclosure agreement, despite the fact that such agreements do not restrain trade, because trial court could have reasonably found that former employees did not learn any trade secrets during the course of their employment). A non-disclosure agreement may be enforceable even if a covenant not to compete is not. *Tom James*, 109 S.W.3d at 888; *CRC-Evans*, 927 S.W.2d at 265. That is because, while non-compete covenants are considered restraints of trade, non-disclosure agreements are not. *CRC-Evans*, 927 S.W.2d at 265; *Zep*, 824 S.W.2d at 663. Non-disclosure agreements do not necessarily restrict a former employee's ability to compete with the former employer, nor do they prohibit the former employee from using, in competition with the former employer, the general knowledge, skill, and experience acquired in former employer. *Zep*, 824 S.W.2d at 663. Rather, such agreements prevent only the disclosure of trade secrets and confidential information acquired by the former employee. *Id.*

McGaughey did not assert any defense to the enforceability of the non-disclosure agreements other than that they are impermissible restraints of trade under the Act. However, the non-disclosure agreement at issue here is not a "restraint of trade" and so

16

it does not come under the rubric of the Act. *See CRC-Evans*, 927 S.W.2d at 265; *Zep*, 824 S.W.2d at 663; TEX. BUS. & COM. CODE ANN. § 15.50(a). We therefore conclude that Shoreline established a probable right to relief with respect to the non-disclosure agreement.[7]

## C. Probable Irreparable Injury

Having found that Shoreline established a probable right to recovery upon a final trial on the merits with respect to all of the contractual provisions at issue, we turn our attention finally to whether Shoreline satisfied the final element required for the issuance of a temporary injunction; namely, whether Shoreline faced probable imminent and irreparable injury if the injunction were not issued. *See Butnaru*, 84 S.W.3d at 204.

An irreparable injury exists if the party injured cannot sufficiently be compensated in damages or the amount of damages is immeasurable by pecuniary standards. *Id.* (citing *Canteen Corp. v. Republic of Tex. Props., Inc.*, 773 S.W.2d 398, 401 (Tex. App.–Dallas 1989, no writ)). The contract provisions at issue here "will not be enforced by an injunction where the party seeking the injunction has failed to show that without injunctive relief he will suffer irreparable injury for which he has no adequate legal remedy." *Reach Group, L.L.C. v. Angelina Group*, 173 S.W.3d 834, 837-38 (Tex. App.–Houston [14th Dist.] 2005, no pet.). However, the purpose of injunctive relief is to halt wrongful acts that are threatened or in the course of accomplishment, rather than to grant relief against past actionable wrongs or to prevent commission of wrongs not imminently threatened. *See Tex. Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 853 (Tex. App.–Austin 2002, pet. denied). Although an injunction is a preventive device, injunctive

---

[7] We note that the definition of "Confidential Information" contained in the Agreement expressly included "trade secrets" and also included the following statement: "I acknowledge and agree that the Confidential Information of the Company described above constitutes and comprises trade secrets of the Company and will at all times be treated by myself as such." As discussed above, however, simply because the Agreement defined a certain piece of information as "confidential" or a "trade secret" does not mean it was in fact confidential or a trade secret. Still, McGaughey asserts no defense, on this appeal, to the enforceability of the non-disclosure paragraphs other than claiming that they are restraints of trade barred by the Covenants Not to Compete Act. Therefore, Shoreline established a probable right to relief with respect to the enforcement of these paragraphs.

relief is improper when the party seeking the injunction has mere fear or apprehension of the possibility of injury. *Harbor Perfusion, Inc. v. Floyd*, 45 S.W.3d 713, 716 (Tex. App.–Corpus Christi 2001, no pet.).

Shoreline noted at the temporary injunction hearing that the Agreement signed by McGaughey included a section entitled "Remedies" which specifically stated that monetary damages would be insufficient to compensate for any breach or violation of the Agreement's provisions.[8] However, Shoreline has pointed us to no Texas case holding that an agreement such as this establishes, for injunction purposes, that remedies at law will be inadequate or that irreparable injury will necessarily be suffered. *See Wright*, 137 S.W.3d at 294.

Moreover, as discussed above, Shoreline produced no evidence that McGaughey had actually breached or violated any covenant or undertaking contained in the Agreement, or even that McGaughey had threatened to breach or violate any such undertakings. At the temporary injunction hearing, Grisemer testified as follows:

> Q. Now, if the Court in this particular hearing were not to enforce the provisions, the Non-Compete provisions as we've asked the Court to enforce in paragraph seven and paragraph eight, and Chuck McGaughey would be allowed to violate the provisions of this agreement, in your opinion, would Shoreline Gas be irreputably [sic] injured?
>
> A. Yes, we would.
>
> Q. And how is that in your opinion?
>
> A. Well, I suppose he would be free to violate the entire agreement and

---

[8] That section stated as follows:

> I recognize and agree that the ascertainment of damages in the event of by breach [sic] or violation of any covenant or undertaking contained in this Agreement would be difficult, if not impossible, and further that the various rights and duties created hereunder are extraordinary and unique so that the Company will suffer irreparable injury that cannot adequately be compensated by monetary damages in the event of my breach or violation of any covenant or undertaking contained in this Agreement.

18

take all the business away from us that we spent so many years to develop by under cutting [sic] our pricing and taking advantage of the relationships that have been developed over the years. And I think there would be some jobs lost.

Q.      If Mr. McGaughey were in fact to violate this agreement and solicit customers, or compete with Shoreline Gas with respect to the customers that it had significant responsibility over, would it create a problem in terms of determining exactly what damage Shoreline Gas would suffer? Would there be any kind of practicable problems associated with that?

A.      There would. We'd have to prove the damages and then recover the damages. The concern would be that Mr. McGaughey would not be capable of financially paying back the damages.

On cross-examination, Grisemer also testified as follows:

Q.      When did Mr. McGaughey tell you he was going to go set up in competition with you?

A.      He did not tell me that.

Q.      Okay. When did he tell you he was going to disclose your secrets to somebody outside the Company?

A.      He did not tell me that.

The record, including this testimony, reflects only that Shoreline had a fear or apprehension of the possibility of injury. *See Harbor Perfusion*, 45 S.W.3d at 716. This is insufficient to establish a probability of irreparable injury as would support a temporary injunction. *Id.* Because we must uphold the trial court's judgment on any grounds supported by the record, *see Davis,* 571 S.W.2d at 862, we conclude that the trial court did not abuse its discretion in denying Shoreline's request for temporary injunction with respect to any of the three contractual provisions at issue. Shoreline's first, second, and third

issues are therefore overruled.[9]

## IV. Conclusion

Viewing the evidence in the light most favorable to the trial court's order, we conclude that the trial court did not abuse its discretion in denying Shoreline's application for a temporary injunction. *See Gonzalez*, 631 S.W.2d at 195. Accordingly, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 17th day of April, 2008.

---

[9] We need not reach Shoreline's fourth issue challenging the trial court's failure to reform the non-compete, non-solicitation, and non-disclosure provisions of the Agreement under section 15.51(c) of the business and commerce code. *See* TEX. BUS. & COM. CODE ANN. § 15.51(c). That is because, as discussed above, we review the trial court's statement that the provisions at issue are unenforceable only insofar as it affects one or more of the elements required for a temporary injunction. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 883 (Tex. App.–Dallas 2003, no pet.); *see also* TEX. R. APP. P. 47.1. Whether the trial court erred in failing to reform those provisions does not affect our analysis of whether Shoreline established a cause of action, a probable right to relief, or probable imminent and irreparable injury. *Butnaru*, 84 S.W.3d at 204.