**SUN OIL COMPANY, Petitioner,**

**v.**

**Earnest WHITAKER et al., Respondents.**

**No. B–234.**

Supreme Court of Texas.

Jan. 31, 1968.

Stubbeman, McRae, Sealy & Laughlin, W. B. Browder, Jr., Midland, Charles F. Heidrick and E. M. Cage, Dallas, for petitioner.

Allison, Mann & Allison, Earl R. Allison and Dwight R. Mann, Levelland, Nelson, McCleskey & Harriger, George W. McCleskey, and Don Graf, Lubbock, for respondents.

CALVERT, Chief Justice.

This is an appeal from a judgment of the trial court denying Sun Oil Company's prayer for a temporary injunction, which judgment was affirmed by the court of civil appeals. 412 S.W.2d 680. We affirm.

Earnest Whitaker is the owner of the surface estate and Sun Oil Company is the owner of a mineral leasehold estate in a 267-acre tract of land in Hockley County. Sun acquired its lease on the property on April 5, 1946, from L. D. Gann and his wife, then the owners of the fee title subject to an outstanding non-participating one-sixteenth free royalty in the west one-half of the tract. The land was conveyed by Gann and his wife to Whitaker on January 2, 1948. The conveyance to Whitaker was subject to Sun's lease, and the deed expressly excepted and reserved all minerals that might be produced from the land to the Ganns, their heirs and assigns.

Sun's lease has been kept alive beyond the primary term of five years by production from eight oil wells which are producing from the San Andres formation. When production from its oil wells decreased because of diminishing pressure in the San Andres formation, Sun sought and obtained permission from the Railroad Commission to take fresh water from the Ogallala formation and inject it into the San Andres in furtherance of a pressure maintenance program. Whitaker and his son-in-law, Doyle Henderson, are using water from the Ogallala formation for cultivating the land as an irrigated farm.

Sun instituted this action to enjoin Whitaker and Henderson from interfering with entry upon the land of its employees and contractors for the purpose of drilling its water wells into the Ogallala formation and using water from that source in its water injection pressure maintenance program. The defendants filed an answer to Sun's petition, and Whitaker filed a counterclaim in which he seeks an injunction to prevent Sun and its employees and contractors from using any of the fresh subterranean water underlying the land for reinjection, secondary recovery and repressuring purposes. The principal defense pleaded to Sun's action and the principal ground pleaded in the counterclaim as a basis for affirmative relief is that Sun's lease does not confer a legal right to use water as Sun proposes. An additional pleaded defense and ground for affirmative relief is that use by Sun of fresh water from the Ogallala formation for injection into the San Andres oil bearing formation would be "waste" of water as defined in and prohibited by Article 7880–3c.[1]

High Plains Underground Water Conservation District No. 1, in which the land is situated, filed a plea in intervention in the case and seeks (1) a declaratory judgment that use of the Ogallala water as contemplated by Sun would constitute "waste" of water as that term is defined by Article 7880–3c A(6), and (2) an injunction to prevent Sun from violating Article 7880–3c and the rules and regulations of the water district. Sun filed a motion to strike the plea in intervention, a plea of privilege to the suit thereby instituted against it, and a motion to sever the water district's cause of action from Sun's

1. All Article references are to Vernon's Texas Civil Statutes.

cause of action against the original defendants and to docket the water district's cause of action as a separate suit. The trial court overruled the motion to strike. There is no showing in the clerk's transcript that action has been taken on the plea of privilege or the motion to sever.

A hearing was held on Sun's prayer for a temporary injunction. All parties joined in a written agreement that in the temporary injunction proceeding no issue was to be joined and no arguments were to be made in the trial or appellate courts by any party "concerning or relative to 'waste' or 'escape' of underground water from one underground water reservoir to any other reservoir as mentioned, provided or defined in Article 7880–3c A(6) (c) or said Article 7880–3c D(4) (c)," or "concerning or relative to the clause 'for any other purpose' as mentioned or provided in said Article 7880–3c D(3)." The parties thus sought to eliminate all issues raised by the water district's pleading and one of the defenses raised by Whitaker's answer from the case in this preliminary proceeding, and to narrow the issue to the rights conferred on Sun and Whitaker by their respective title documents. Only the latter issue was tried by the trial court, as is clearly indicated by the findings of fact and conclusions of law, and only that issue was considered and decided by the court of civil appeals.

Sun's lease grants and leases the 267-acre tract to Sun "for the purposes of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, laying pipe lines, building tanks, power stations, telephone lines and other structures and means thereon to produce, save, take care of, treat, store, transport and manufacture said minerals, and housing its employees * * *." The lease also provides: *"Lessee shall have free use of oil, gas, coal, wood and water from said land except water from Lessor's wells for all operations hereunder * * *."* [2] The judgments of the trial court and court of civil appeals are based primarily upon a conclusion by the trial court that the parties to the lease did not intend that Sun should have free use of water from the Ogallala source for a water flooding pressure maintenance program when such use would result in substantial damage to the surface owner's estate in the land.

The judgments of the courts below must be affirmed for reasons and on a ground neither urged on appeal by the appellee-respondent nor noticed by the court of civil appeals.

■ Some of the rules of law governing the right of trial courts to grant or deny writs of temporary injunction, and appellate review of such orders, are well established and clearly defined. To warrant issuance of the writ, an applicant is not required to establish that he will prevail on final trial; he needs only to plead a cause of action and to show a probable right on final trial to the relief he seeks and probable injury in the interim. Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549 (1953); Southwestern Greyhound Lines, Inc. v. Railroad Commission of Texas, 128 Tex. 560, 99 S.W.2d 263, 109 A.L.R. 1235 (1936). To be entitled to the writ when the only relief sought on final trial is injunctive, the applicant must show a probable right on final hearing to a permanent injunction. Oil Field Haulers Ass'n v. Railroad Commission, 381 S.W.2d 183 (Tex.Sup.1964). A necessary corollary of the preceding rule is that in no event should the writ issue for the protection of an applicant who does not show a probable right on final trial to a permanent injunction. Camp v. Shannon, 162 Tex. 515, 348 S.W.2d 517 (1961). A trial court judgment either granting or denying a writ will not be reversed unless the appellate courts are convinced that it represents a clear abuse of discretion. Texas Foundries, Inc. v. International Moulders Foundry Workers Union, 151 Tex. 239, 248 S.W.2d 460 (1952).

---

**2.** Emphasis ours throughout unless otherwise indicated.

■ Considering the record before us and applying the foregoing rules which must guide our action, it would seem obvious that we cannot reverse the judgments denying Sun's prayer for a writ of temporary injunction. The agreement that issue would not be joined and arguments would not be made concerning the issue of statutory waste raised by Whitaker's answer and the water district's plea in intervention completely destroyed Sun's ability to show its probable right on final trial to a permanent injunction. The basis of Sun's claimed right to injunctive relief is that its lease gives it a legal right to free use of all water from the Ogallala formation reasonably necessary to produce the oil underlying the land. By way of defense, Whitaker pleaded that the lease, properly interpreted, does not confer that right, and that even if it does, Sun's proposed use of the water is prohibited by statute. The trial court permitted the water district to intervene by overruling Sun's motion to strike the plea in intervention. The water district's pleading also asserts that Sun's proposed use of the water is prohibited by statute as well as by its rules. If we assume that Sun's interpretation of the lease is correct, Sun would yet not be entitled to a permanent injunction to protect it from interference with its water flooding program if its proposed use of the water is prohibited by statute. With the latter issue stipulated out of this trial and appeal, we are not at liberty to determine the merits of the issue; therefore, we cannot hold that the statute does not prohibit Sun's use of the water and that Sun has shown a probable right to a permanent injunction.

If we should hold that under a proper interpretation of its lease Sun has a legal right to free use of all water from the Ogallala formation reasonably necessary for production of the oil underlying the land, as Sun would have us do, and leave the statutory waste issue undetermined, as we are required to do, our decision could well be nothing more than an advisory opinion. Sun recognizes this to be true by the following statement in its application for writ of error: "The opinion of the Supreme Court in this cause *will essentially control the legal issues of construction of the oil, gas and mineral lease* when the cause is ultimately heard on the merits for permanent injunction."

■ We cannot approve inauguration of a practice, by agreement, of trying the right of a party to a writ of temporary injunction on piecemeal issues. Permitting it in this case might resolve the major issue; but if it were permitted in this case, the right could be claimed with equal logic by other litigants in other cases. The ultimate result would be to make a mockery of our long-established rules governing the trial of temporary injunction proceedings, as should be self-evident. To illustrate: Let us assume a case in which the owner of land sues to cancel a gravel lease on the ground of fraud and seeks a temporary and permanent injunction to prevent the further taking of gravel; and the lessee defends the suit primarily on the ground that there was no fraud in procurement of the lease, but also alleges that in any event the cause of action for cancellation is barred by the statute of limitation. Could we permit the parties to try by agreement only the issue of fraud as a basis for granting or denying a temporary injunction, thus reserving for final trial only the issue of limitation as a basis for granting or denying a permanent injunction? Obviously not. While the underlying issues raised by separate defenses may be tried in separate trials, Rule 174(b), Texas Rules of Civil Procedure, the cause of action for temporary injunctive relief is indivisible and may not be so tried. The basic issue to be tried is the probable right of the applicant to a permanent injunction when *all* defenses made by the pleadings are considered. To hold otherwise would authorize use of a temporary injunction proceeding as a vehicle for piecemeal trial of defenses to the cause of action for temporary injunctive relief. We have often condemned piecemeal trials of indivisible causes of action.

Iley v. Hughes, 158 Tex. 362, 311 S.W.2d 648 (1958); Waples-Platter Co. v. Commercial Standard Ins. Co., 156 Tex. 234, 294 S.W.2d 375 (1956); Fisher v. Coastal Transport Co., 149 Tex. 224, 230 S.W.2d 522 (1950). Cf. Storey v. Central Hide & Rendering Co., 148 Tex. 509, 226 S.W.2d 615 (1950).

The judgment of the court of civil appeals is affirmed.