**John G. ALLEN et al., Appellants,**

v.

**Rudolfo CHACON, Jr., et al., Appellees.**

**No. 17344.**

Court of Civil Appeals of Texas.
Dallas.

Dec. 12, 1969.

Rehearing Denied Jan. 16, 1970.

Franklin E. Spafford, Warren Whitham, Spafford, Freedman, Hamlin, Gay & Whitham, Dallas, for appellants.

D. Marcus Ranger, Finch, Lockridge & Cunningham, Dallas, for appellees.

DIXON, Chief Justice.

This is an appeal from an order granting a temporary injunction.

On April 13, 1969 this suit was filed by Rudolfo Chacon, Jr., a minor 12 years of age, by next friends Rudolfo Chacon, Sr. and Maria Chacon, his parents, and also by his parents individually against appellants John G. Allen, Principal of Alex W. Spence Junior High School, Nolen Estes, Superintendent of Dallas Independent School District and Marvin Berkley, President of the Board of Education, individually and in their official capacities. Appellees pray for damages and for an injunction restraining appellants from continuing in effect the indefinite suspension of Rudolfo Chacon, Jr., as a student at Alex W. Spence Junior High School.

The minor's suspension went into effect January 17, 1968. The court granted a restraining order on April 3, 1969. After a hearing a temporary injunction was granted on April 10, 1969 restraining appellants from refusing to admit Rudolfo Chacon, Jr. as a student at the school.

Pursuant to the restraining order and temporary injunction the boy was readmitted to school on April 4, 1969 and has been in attendance since that date. He had been out of school more than a year.

## FACTS

On December 24, 1967 a fire caused about $3,800 damage at Alex W. Spence Junior High School. It is alleged that Rudolfo Chacon, Jr. and another minor broke into the school and set fire to the building. On January 17, 1968 Rudolfo Chacon, Jr. and his parents were notified in writing that the boy was suspended indefinitely from school until arrangements could be made to pay for the damage caused by the fire.

The Board of Education has adopted rules and regulations pertaining to the destruction of school property by students. One of the regulations provides that pupils who destroy school property will be required to pay in full for repairs before further attending school, and, also that the pupils may be suspended from school in addition to making repayment.[1]

Rudolfo Chacon, Sr. testified that subsequent to their son's suspension he and his wife went to the School District's Administration Building on Ross Avenue and were interviewed by an assistant superintendent. They say that they were first informed that they would be required to make a payment of $500 before their son would be readmitted to school. Upon their informing the official of their inability to pay such sum, the amount was reduced to $300, then to installment payments of $25 every two weeks. They say that they refused to agree to this arrangement because they are not financially able to make such payments.

Rudolfo Chacon, Sr. testified that his family consists of himself, his wife Mrs. Maria Chacon, and their three children. All of the children are of school age. All three were attending public schools until Rudolfo Chacon, Jr. was suspended in January 1968. Rudolfo, Jr. has a speech defect and was undergoing speech therapy furnished by the School District. He was responding to such treatment, but his condition has worsened during his suspension.

Chacon, Sr. testified that he is employed as a cook at Holiday Inn at a salary of $99 every two weeks. Mrs. Chacon says that she was also employed until Rudolfo, Jr. was suspended. She then quit work

1. The regulation is as follows:
   "VANDALS AND VANDALISM
   1. *Destruction of School Property.* Pupils who destroy, deface, or steal school property during school hours, out of school hours, or during the summer months will be dealt with as follows:
   a. They will be required to pay in full for repairs, restitution, or replacement of

the property involved before further attendance of school.
   b. They may be suspended from school in addition to making repayment.
   c. In flagrant cases they may be permanently expelled from school upon the approval of the Superintendent of Schools."

and has not been employed since his suspension, as she does not want the child to be left alone at home or to be left free to roam the streets without supervision.

In September 1968 books and supplies were bought in preparation for the boy's re-entering school. But after two days he was informed that his suspension was still in effect and he was not allowed to continue his school attendance.

Herman Collins is a visiting teacher for four schools in the School District. He recently visited in the Chacon home and spoke to the boy and his parents. It is his belief that the parents are sincere in their desire for their son to return to school. The child needs speech therapy and is amenable to treatment for his speech defect.

Hollis Allen is an assistant superintendent whose duties, among others, are to look into student unrest, take care of suspensions and talk to parents about reparations for vandalism. Allen testified that the Chacon parents came to the School District Administration Building in May 1968 to discuss their son's suspension. The Chacons agreed to pay $25 every two weeks on their half [2] of the fire damage. The suspension of Rudolfo, Jr. was to be lifted immediately upon the payment by his parents of the first $25 installment. But the first payment has never been made. The School District wants the boy to be back in school.

Allen testified that the School Administration recognizes that in some instances parents cannot make payment of the damages because of economic stress. In such cases it is the policy of the District to ascertain the financial condition of the parents, if possible, and to require only such payments as are within their means. A suspended child will be admitted as soon as the first payment is made, no matter how small the payment is. And the child will thereafter be permitted to re-main in school even if the parents fail to keep up their installment payments. This would have been the District's policy in the Chacon case, but the Chacons did not perform their agreement even to the extent of making the first payment of $25.

OPINION

Art. 2780, Vernon's Ann.Civ.St. of Texas provides that the board of trustees of independent school districts shall have exclusive power to manage and govern the schools of the district and may adopt such rules, regulations and by-laws as they may deem proper. Rights and titles to school property shall vest in the board. It was pursuant to such statutory authority that the school board in this case adopted the rules and regulations pertaining to vandalism which we heretofore copied in a footnote to this opinion.

Appellees on the other hand rely on Art. 2904, V.A.C.S. This statute provides, among other things, that the trustees may suspend any pupils found guilty of incorrigible conduct, but such suspension shall not extend beyond the current term of the school. Appellees contend that the indefinite suspension of Rudolfo Chacon, Jr. violates Art. 2904.

In answer to appellees' contention appellants say that the legislative history of the two statutes clearly shows that Article 2904 does not apply to independent school districts. It applies only to common school districts which are not self-governing, but are under the supervision of the counties in which they are located. This is shown by the enactment of Senate Bill No. 218 by the 29th Legislature in 1905. What are now Articles 2780 and 2904, V.A.C.S., were enacted as parts of Senate Bill No. 218. What is now Article 2904 was enacted under the heading "Common School Districts." What is now Article 2780 was enacted under the heading "Independent School Districts."

2. The other half is being paid by the parents of the other boy involved in setting the fire. They made an initial payment of $300 and are making monthly payments on the balance.

We have concluded that it is unnecessary for us to pass on the question of law raised by appellants. For if we should agree with appellants in regard to said question of law there are nevertheless fact questions presented by the record which convince us that the order granting the temporary injunction should be affirmed.

The testimony before us is that the Chacons are persons of very slender means financially. So far as the present record shows their only income is the salary of Rudolfo Chacon, Sr., which at the time of the hearing was $99 every two weeks. This is a small income to support a family of five persons, three of whom are school age children. The record is silent as to what debts, if any, the family owes. The record is also silent as to their ability to borrow enough money to make the required payments, even the first installment of $25.

Since it is the policy of the School District to take into account the financial condition of the parents in requiring payments for vandalism, we are of the opinion that the trial court did not abuse its discretion in granting the temporary injunction.

Probably when the case is reached for a trial on the merits these and other fact questions can be resolved so that the propriety of the boy's further suspension can be finally determined.

It has long been the law that trial courts are endowed with wide discretionary powers with reference to the granting of temporary injunctions. Appellate courts may not reverse an order granting a temporary injunction except when the court is shown to have abused its discretion. Sun Oil Co. v. Whitaker, 424 S.W.2d 216, 218 (Tex.Sup.1968). We have concluded that the trial court did not abuse its discretion in this case.

The judgment of the trial court is affirmed.