William A. SWINNEY, Appellants,

v.

The CITY OF SAN ANTONIO, Texas, Appellee.

No. 15077.

Court of Civil Appeals of Texas, San Antonio.

May 31, 1971.

Rehearing Denied July 31, 1972.

Gray, Gardner, Robison & Cobb, San Antonio, for appellants.

Howard C. Walker, City Atty., Sawtelle, Goode, Davidson & Leighton, John W. Davidson, San Antonio, for appellee.

CADENA, Justice.

William A. Swinney, defendant below, appeals from a temporary injunction which (1) restrains him from extending his water supply and distribution system in the Summit Oaks Subdivision, and enjoins him from connecting his water supply and distribution system to any residences, houses or buildings within the subdivision which have not yet been connected to the system; and (2) orders him to submit plans and specifications of his water supply and distribution system to the Water Board of the City of San Antonio.

The Summit Oaks Subdivision lies beyond the corporate limits of the City of San Antonio but within the "extraterritorial" jurisdiction of such City, as defined by Sec. 3A(5) of the Municipal Annexation Act (Article 970a, Vernon's Annotated Civil Statutes). In exercise of the power granted by Article 974a, V.A.C.S., the City has adopted subdivision regulations and, as authorized by Sec. 4 of the Municipal Annexation Act, has made the rules and regulations governing plats and subdivisions of land applicable to territory within its extraterritorial jurisdiction. The rules and regulations pertinent to this case are contained in Sec. 36–13 of the City Code.

Sec. 36–13(a) requires that, except under conditions described in Sec. 36–13(b), all subdivisions within the City and its extraterritorial jurisdiction be provided with water supply and distribution systems approved by the state health department, and that the plans, specifications and utility layouts for such systems be submitted to the City Water Board for approval. The City Planning Commission is prohibited from approving any plat without the prior approval by the Water Board of the utility layout. No water supply and distribution system may be constructed by the subdivider until the plat has been approved by the Planning Commission and the plans and specifications for the system have been approved by the Water Board. Construction of the system is subject to inspection by the Water Board to insure compliance with the approved plans and specifications. Sec. 36–13(c) requires that the design, materials and construction of such systems conform to the Criteria for Water Supply and Distribution adopted by the Water Board.

Sec. 36–13(b) provides that no water supply and distribution system shall be required for subdivisions which meet all five of the following conditions:

(1) The subdivision lies outside the city limits.

(2) The subdivision lies outside the area included within the Water Board's master plan for water system improvements.

(3) Each lot in the subdivision consists of at least one acre.

(4) A potable ground-water supply approved by the Texas State Department of Health and sufficient in quantity to furnish the water needs of the subdivision underlies the entire subdivision.

(5) Where liquid waste disposal is proposed to be provided by septic tanks, individual plat plans for each tract of land showing well and septic tank locations have been approved by the San Antonio Metropolitan Health District.

On March 23, 1971, after he had applied for approval of his plat, defendant advised the Water Board, by letter, that he would include, among the deed restrictions applicable to the subdivision a requirement that each "building site within the subdivision shall have a water system supplied by a well drilled and completed in accordance with the standards of the City of San Antonio Water Board. Said well to be inspected by the City Water Board during construction."

Defendant submitted to the San Antonio Metropolitan Health District a copy of his plat showing the proposed locations of houses, septic tanks and wells on each lot. This plat showed a well on each lot, located more than 150 feet from the septic tank on such lot.

Apparently, the Health District approved the plans for location of house, septic tank and well on each lot. Since all of the other conditions set forth in Sec. 36–13(b) were present, this meant that defendant's plat could be approved without requiring him to provide a water supply and distribution system approved by the State Department of Health, and without submitting plans for such system for the approval of the Water Board. Defendant's plat was approved by the Planning Commission and filed among the plat records of Bexar County.

Instead of providing each lot with its own well, defendant constructed a water supply and distribution system consisting of one well, storage tanks, pumps, distribution mains and service lines. He testified that mains have been run to serve all 42 lots in the subdivision from the one well. This central water supply and distribution system has not been approved by the State Department of Health; it does not comply with the standards established by the State; nor does it comply with the criteria adopted by the City Water Board. The plans and specifications for such system have not been submitted to the Water Board for approval, nor was construction of the system inspected by the Water Board.

■ Defendant insists that since all of the conditions set out in Sec. 36–13(b) were present, he is not subject to the provisions governing the installation of water supply and distribution systems. But it is clear that Sec. 36–13(b) contemplates, in lieu of a central distribution system, the drilling of a well on each separate building lot. It was only because defendant represented that each lot would have its separate individual well that he was exempted from the requirement of installing a central distribution system. Defendant contends, in effect, that since his proposal to put a well on each lot exempted him from the requirements of Sec. 36–13(a) relating to central supply and distribution systems, he may now instead of drilling a well for each lot, install a central system without complying with the regulations applicable to central supply and distribution systems. We reject the contention that a person who is under an obligation to do either A or B can, by representing that he will do B, relieve himself of the obligation to do either.

It is clear that under the ordinance defendant had the option of installing a central system approved by the State and meeting Water Board criteria, or furnishing each lot with its individual well. He has done neither. The violation of the ordinance is patent.

Defendant, by way of several points, insists that the trial court erred in finding that there would be probable injury to the City or to its inhabitants if the temporary injunction did not issue, and that the order granting the temporary injunction is invalid because it does not set forth the reasons why injury will result if the temporary relief is not granted.

■ The order, after reciting the fact that defendant has violated the ordinance,

states that the City " . . . has shown a probable right and a probable injury to that right." Defendant insists that this is not a sufficient compliance with Rule 683, Texas Rules of Civil Procedure, which requires that every order granting an injunction set forth the reasons for its issuance. In support of this argument, defendant calls our attention to that portion of the opinion of the Texas Supreme Court in State of Texas v. Cook United, Inc., 464 S.W.2d 105, 106 (1971), where it is said that it is necessary that the order " . . . give the reasons why injury will be suffered if the interlocutory relief is not ordered." But the actual holding in *Cook* contains a sufficient answer to defendant's contention. There, the order merely recited that the State was entitled to a temporary injunction, without making any statement, even in general terms, relating to probable injury. However, the applicable statute authorized the issuance of an injunction restraining its violation. After pointing out that, in the absence of the statutory authorization of injunctive relief, " . . . it would be necessary for the court to state in the order why it decided that the applicant would suffer harm, or be endangered by probable injury, if not granted the preliminary injunction.", Justice Reavley said, "However this statute itself declares the injury. The order need not restate the words of the statute making these Saturday and Sunday sales a public nuisance. The finding of the violation is itself a finding of injury and reason for the order to cease." 464 S.W.2d at 107.

Section 4 of Article 970a, after empowering a city to extend its subdivision regulations to the area under its extraterritorial jurisdiction, provides that no violation of the ordinance outside the corporate limits shall be subject to the penal sanctions imposed by the subdivision ordinance. But the section then continues to provide that the city shall have a right to enjoin violations of the ordinance within its extraterritorial jurisdiction.

We do not believe that the absence of a legislative declaration of public nuisance in Article 970a, Sec. 4, is sufficient to make inapplicable the rule announced in *Cook*. Article 1011h, V.A.C.S., empowers cities to enjoin violations of their zoning ordinances, but contains no "public nuisance" language. Nevertheless, our Supreme Court has held that a city, seeking to enjoin a violation of its zoning ordinance, need not prove that the violation would damage it or its residents. Proof of the violation of the ordinance makes out a sufficient case for injunctive relief. City of Fort Worth v. Johnson, 388 S.W.2d 400 (Tex.1964). The finding of the violation of the subdivision ordinance in the order before us itself constitutes a recital of injury.

The judgment of the trial court is affirmed.

BARROW, Chief Justice.

I concur. The trial court did not abuse its discretion in granting the temporary injunction pending trial on the merits. Sun Oil Company v. Whitaker, 424 S.W.2d 216 (Tex.1968).