

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

May 15, 1974

Overruled by
city of Westlake Hills
Westlake Zips efmo cong
598 S w  for  Wies 1980

The Honorable Hugh C. Yantis, Jr.
Executive Director
Texas Water Quality Board
314 W. 11th Street
Austin, Texas 78701

Opinion No. H- 304

Re: Authority of cities to estab-
lish water pollution control
programs under § 21.357, Texas
Water Code

Dear Mr. Yantis:

You have asked three questions which relate to § 21.357, Texas Water Code. That section provides:

"(a) Every city in this state having a population of 5,000 or more inhabitants shall, and any city of this state may, establish a water pollution control and abatement program for the city. The city shall employ or retain an adequate number of personnel, on either a part-time or full-time basis as the needs and circumstances of the city may require, who by virtue of their training or experience are qualified to perform the water pollution control and abatement functions required to enable the city to carry out its duties and responsibilities under this section.

"(b) The water pollution control and abatement program of a city shall encompass the entire city and may include areas within its extraterritorial jurisdiction which in the judgment of the city should be included to enable the city to achieve the objectives of the city for the area within its territorial jurisdiction. The city shall include in the program the services and functions which, in the judgment of the city or as may be reasonably required by the board, will provide effective water pollution control and abatement for the city, including the following services and functions:

"(1) the development and maintenance of an inventory of all significant waste discharges into or adjacent to the water within the city and, where the city so elects, within the extraterritorial jurisdiction of the city, without regard to whether or not the discharges are authorized by the board; ·

"(2) the regular monitoring of all significant waste discharges included in the inventory prepared pursuant to Subdivision (1) of this subsection;

"(3) the collecting of samples and the conducting of periodic inspections and tests of the waste discharges being monitored to determine whether the discharges are being conducted in compliance with this chapter and any applicable permits, orders or regulations of the board, and whether they should be covered by a permit from the board;

"(4) in cooperation with the board, a procedure for obtaining compliance by the waste dischargers being monitored, including where necessary the use of legal enforcement proceedings; and

"(5) the development and execution of reasonable and realistic plans for controlling and abating pollution or potential pollution resulting from generalized discharges of waste which are not traceable to a specific source, such as storm sewer discharges and urban runoff from rainwater."

Your first two questions are:

"First, does Section 21.357 of the Texas Water Code confer upon cities of this state any powers which are not otherwise given them by law? Second, does this section give cities any power to control activities outside of the city limits but within the extraterritorial jurisdiction of these cities?"

Although it is clear that there are other sources of power for a city's exercise of some of the duties outlined in § 21. 357, both within the city limits, and within the city's extraterritorial jurisdiction, e.g., § § 21. 351, 21. 353 and 21. 354, Texas Water Code; Articles 970a, 1015 and 1175, Vernon's Texas Civil Statutes; Swinney v. City of San Antonio, 483 S. W. 2d 556 (Tex. Civ. App., San Antonio, 1971, no writ), we believe a city's authority is not necessarily limited to those statutes. Whatever authority is necessary to perform the actions permitted or required under § 21. 357 is necessarily implied whether or not that authority may be granted independently by other statutes. cf., Davis v. City of Taylor, 67 S. W. 2d 1033 (Tex. 1934); Foster v. City of Waco, 255 S. W. 1104 (Tex. 1923); Hayden v. City of Houston, 305 S. W. 2d 798 (Tex. Civ. App., Fort Worth, 1957, writ ref'd, n. r. e.). Of course, a city's authority would not extend to the point of setting water quality standards. § § 21. 006, 21. 075, 21. 257, Texas Water Code.

Therefore, in answer to your first and second questions, it is our opinion that, irrespective of the power conferred by other statutes, a city may exercise the power necessary to perform the activities permitted and required by § 21. 357 of the Water Code.

Your third question is:

> "Can this section be relied upon by cities to furnish a basis for the regulation of private sewage facilities? If so, by use of this authority can cities use the power conferred by Section 21. 357 to regulate private sewage facilities located outside the city limits, but within the extraterritorial jurisdiction of the city? "

You indicate that your question is prompted by a belief that § § 21. 083 and 21. 084, Texas Water Code, provide an exclusive means of regulating private sewage facilities. Section 21. 083 creates a means of regulation by the board. A public hearing is required as is consultation with the State Commissioner of Health. The Board is permitted to establish a licensing system and may delegate the licensing function to local governments. Section 21. 084 gives similar authority to counties.

Our analysis of your first two questions requires an affirmative response to your third inquiry. The authority given cities under §21.357 and other statutes is sufficiently broad to permit regulation of private sewage facilities. Sections 21.083 and 21.084 do not expressly prohibit local regulation. cf., Swinney v. City of San Antonio, supra.

## SUMMARY

A city has broad powers to establish water pollution control programs under § 21.357, Texas Water Code. These powers can include regulation of private sewage facilities in the city and in its extraterritorial jurisdiction.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee