

# NUMBER 13-18-00416-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CITY OF PALMVIEW,                                                 **Appellant,**

**v.**

AGUA SPECIAL UTILITY DISTRICT,                         **Appellee.**

## On appeal from the 389th District Court
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Hinojosa**
**Memorandum Opinion by Chief Justice Contreras**

This is an appeal of a temporary injunction issued in a dispute regarding the provision of wastewater services in the city of Palmview (the City). The City, appellant herein, filed suit seeking a declaration and a writ of mandamus compelling appellee, Agua Special Utility District (Agua SUD), to permit the City to construct wastewater lines and

facilities. Agua SUD filed a counterclaim in which it sought a permanent injunction prohibiting the City from constructing those utilities.

The trial court granted Agua SUD's request for a temporary order enjoining the City from taking further action in that regard. The City contends in this appeal by three issues that (1) the trial court abused its discretion by granting the temporary injunction, (2) the trial court lacked jurisdiction because of governmental immunity, and (3) the trial court lacked jurisdiction because exclusive jurisdiction over the dispute was vested in the Public Utility Commission of Texas. We affirm.

## I. BACKGROUND

The City, a home rule municipality located in Hidalgo County, agreed several decades ago to transfer its Certificates of Convenience and Necessity (CCNs) for water and wastewater to Agua SUD's predecessor. *See* TEX. WATER CODE ANN. §§ 13.241– .258 (West, Westlaw through 2017 1st C.S.). In 2015, the City determined that a lift station and wastewater collection lines were necessary to provide sufficient wastewater services to prospective businesses in an area of the City near Interstate 2. Because Agua SUD had the CCN for the geographic area in question, the City negotiated with Agua SUD in order to obtain approval for the utility project.

In January of 2018, Agua SUD determined that the project would not be necessary because its own project, financed in part by the Texas Water Development Board, would provide the necessary services to the area in question and could be completed in early 2019. Furthermore, Agua SUD determined that the lift station and force main[1] the City

---

[1] "Force mains are pipelines that convey wastewater under pressure from the discharge side of a pump or pneumatic ejector to a discharge point. Pumps or compressors located in a lift station provide the energy for wastewater conveyance in force mains." *Wastewater Tech. Fact Sheet: Sewers, Force Main*,

2

sought to construct would be of no use to Agua SUD. Nevertheless, the City applied to Agua SUD for permission to go ahead with the proposed project, asserting that "time is of the essence" because the businesses looking to begin operations in the area would not do so unless and until adequate wastewater collection services were available. According to the City, Agua SUD has not approved or denied its application. Agua SUD explained the City submitted an incomplete application and did not supplement it after being informed of the needed missing items.

The City filed suit in February 2018 seeking to compel Agua SUD to permit it to complete the project. Agua SUD filed an answer and a counterclaim requesting temporary and permanent injunctive relief. After a hearing, the trial court granted Agua SUD's request for temporary injunction and set a trial date for August 6, 2018. The temporary injunction order stated that, by initiating construction of wastewater lines and facilities without a CCN and without approval by Agua SUD's board of directions, the City acted in violation of the Texas Water Code and "utterly without lawful authority." The order further stated:

> the evidence presented by Agua SUD at the hearing on the petition for temporary injunction established that unless the [City] is immediately restrained from taking any further action to construct any lines, facilities or other utility improvements within the geographical area encompassed in the [CCN] held by Agua SUD, Agua SUD will suffer irreparable harm resulting from the violation of the Texas Water Code and the Agua SUD rules and procedures by the lawless actions of the [City], resulting from the unnecessary expense of decommissioning and removal of facilities neither desired nor approved by Agua SUD, and resulting from the waste of taxpayer resources in the construction of the unauthorized improvements.

U.S. ENVTL. PROT. AGENCY (Sept. 2000) *available at* https://www3.epa.gov/npdes/pubs/force_main_sewers.pdf.

3

The order therefore commanded the City

> to desist and refrain from taking any further action to construct any lines, facilities or other utility improvements within the geographical area encompassed in the [CCN] held by Agua [SUD], from the entry of this order until further order of this Court.

This appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West, Westlaw through 2017 1st C.S.) (authorizing immediate appeal from interlocutory order granting temporary injunction).

## II. SUBJECT MATTER JURISDICTION

We address the City's second and third issues first, by which it argues that the trial court lacked subject matter jurisdiction to grant the temporary injunction.

### A. Standard of Review

To render a binding judgment or order, a court must have subject matter jurisdiction over the controversy. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010). Whether a court has subject matter jurisdiction is a question of law that we review de novo. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Because a challenge to the court's subject matter jurisdiction cannot be waived, a party may raise it for the first time on appeal. *Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 138 (Tex. 2018).

### B. Governmental Immunity

By its second issue, the City argues that the trial court lacked subject matter jurisdiction because Agua SUD failed to plead a waiver of the City's governmental immunity.

#### 1. Applicable Law

4

Governmental immunity defeats subject matter jurisdiction in suits against subdivisions of the State, such as the City, unless that immunity has been clearly and unambiguously waived by the legislature. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). However, a governmental entity's immunity is subject to certain boundaries. *See Nazari v. State*, 561 S.W.3d 495, 501 (Tex. 2018); *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006) (op. on reh'g). One such boundary is that a governmental entity simply does not have immunity from suit for claims against it that are germane to, connected with, and properly defensive to affirmative claims made by the entity, to the extent that the claims against the entity offset the entity's own claims. *Nazari*, 561 S.W.3d at 501; *City of Dallas v. Albert*, 354 S.W.3d 368, 372 (Tex. 2011); *Reata*, 197 S.W.3d at 376–77 (Tex. 2006); *see, e.g.*, *Anderson, Clayton & Co. v. State ex rel. Allred*, 62 S.W.2d 107, 109 (Tex. 1933) (allowing claim for injunctive relief). "This is not because the governmental entity 'waives' its immunity by filing a claim for affirmative relief." *Nazari*, 561 S.W.3d at 501. "Instead, the scope of governmental immunity simply does not reach the defensive counterclaims to the extent that any recovery on the counterclaims serves as an 'offset' against the government's recovery." *Id.* at 502. Where a governmental entity "voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, and the defense will be entitled to plead and prove all matters properly defensive." *Id.* at 504; *Anderson*, 62 S.W.2d at 110; *see Reata*, 197 S.W.3d at 375 ("[W]e believe it would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's claims against it").

## 2. Analysis

Here, the City brought suit against Agua SUD seeking a declaration and a writ of mandamus compelling Agua SUD to permit the City to construct wastewater lines and facilities. Agua SUD's counterclaim sought to prevent the City from constructing those wastewater lines and facilities the City sought permission for from the trial court. Thus, Agua SUD's counterclaim for injunctive relief was properly defensive, connected with, and germane to the affirmative claims made by the City. *See Nazari*, 561 S.W.3d at 501; *Anderson*, 62 S.W.2d at 537. Accordingly, the trial court did not lack subject matter jurisdiction over the controversy due to the doctrine of governmental immunity. *See Nazari*, 561 S.W.3d at 501; *Anderson*, 62 S.W.2d at 537.

We overrule the City's second issue.

## C. Exclusive Jurisdiction

By its third issue, the City argues that the trial court lacked subject matter jurisdiction because the Public Utility Commission of Texas (PUC) has exclusive jurisdiction over Agua SUD's counterclaim.

### 1. Applicable Law

"We begin with the presumption that district courts are constitutionally authorized to resolve legal disputes." *Oncor Elec.*, 546 S.W.3d at 138 (citing TEX. CONST. art. V, § 8; *In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004) (orig. proceeding)). "To overcome that presumption, the Constitution or another law must grant exclusive jurisdiction to another court or an administrative agency." *Id.* (citing *In re Sw. Bell Tel. Co.*, 235 S.W.3d 619, 624–25 (Tex. 2007) (orig. proceeding); *Entergy*, 142 S.W.3d at 322). Whether an agency has exclusive jurisdiction presents a question of statutory interpretation we review de novo. *Id.* (citing *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212,

6

222 (Tex. 2002) (op. on reh'g)). If an agency has exclusive jurisdiction, a trial court lacks subject matter jurisdiction and must dismiss any claim within the agency's jurisdiction until that party has exhausted all administrative remedies. *Id.*; *Subaru*, 84 S.W.3d at 221.

"A state agency 'has exclusive jurisdiction when the Legislature has granted that agency the sole authority to make an initial determination in a dispute.'" *Oncor Elec.*, 546 S.W.3d at 138 (quoting *Entergy*, 142 S.W.3d at 321); *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000). "Absent such an explicit grant, an agency may also have exclusive jurisdiction 'when a pervasive regulatory scheme indicates that the Legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed." *Oncor Elec.*, 546 S.W.3d at 138 (quoting *In re Sw. Bell Tel.*, 235 S.W.3d at 624–25); *Subaru*, 84 S.W.3d at 221. In deciding whether a "pervasive regulatory scheme" exists, the statutory language is determinative. *Oncor Elec.*, 546 S.W.3d at 138 (citing *Entergy*, 142 S.W.3d at 322–23).

In construing a statute, our purpose is to give effect to the Legislature's intent as expressed in the language of the statute. *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007); *Bennet*, 35 S.W.3d at 16. To do so, we consider the statute's language, history, and purposes and the consequences of alternate constructions. *Bennet*, 35 S.W.3d at 16; *see* TEX. GOV'T CODE ANN. § 311.023 (West, Westlaw through 2017 1st C.S.). Furthermore, there is no presumption that administrative agencies are authorized to resolve disputes. *Subaru*, 84 S.W.3d at 220. Thus, administrative bodies may exercise only those powers that the law confers upon them in clear and express statutory language and those reasonably necessary to fulfill a function or perform a duty that the Legislature has expressly placed with the agency.

*Oncor Elec.*, 546 S.W.3d at 138; *Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006); *see Subaru*, 84 S.W.3d at 220. "Courts will not divine by implication additional authority to agencies, nor may agencies create for themselves any excess powers." *BCY Water Supply Corp. v. Residential Invs., Inc.*, 170 S.W.3d 596, 600 (Tex. App.—Tyler 2005, pet. denied); *see Subaru*, 84 S.W.3d at 220.

### 2. Analysis

The Texas Water Code requires a retail public utility[2] to obtain a CCN from the PUC before providing retail water or sewer utility service to an area and provides a way for the certificate to be revoked or amended. TEX. WATER CODE ANN. §§ 13.242(a), 13.254 (West, Westlaw through 2017 1st C.S.).

The first question we must answer is whether the PUC has exclusive jurisdiction over the claim for injunctive relief brought by Agua SUD against the City, a municipality, which allegedly interfered with Agua SUD's CCN in an area within the municipality's city limits. We conclude that it does not.

The City argues that PUC has exclusive jurisdiction over Agua SUD's counterclaim and relies primarily on section 13.252 of the Texas Water Code:

> If a retail public utility in constructing or extending a line, plant, or system interferes or attempts to interfere with the operation of a line, plant, or system of any other retail public utility, or furnishes, makes available, renders or extends retail water or sewer utility service to any portion of the service area of another retail public utility that has been granted or is not required to possess a [CCN], the [PUC] may issue an order prohibiting the construction, extension, or provision of service or prescribing terms and

---

[2] A retail public utility under Chapter 13 of the Texas Water Code means: "any person, corporation, public utility, water supply or sewer service corporation, *municipality*, political subdivision or agency operating, maintaining, or controlling in this state facilities for providing potable water service or sewer service, or both, for compensation." TEX. WATER CODE ANN. § 13.002(19) (West, Westlaw through 2017 1st C.S.) (emphasis added). It is undisputed that the City and Agua SUD are retail public utilities.

conditions for locating the line, plant, or system affected or for the provision of the service.

*Id.* § 13.252.

As noted earlier, our ultimate goal in construing a statute is to give effect to the Legislature's intent as expressed in the language of the statute. *Duenez*, 237 S.W.3d at 683; *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 892 (Tex. 2000); *Tara Partners, Ltd. v. City of S. Houston*, 282 S.W.3d 564, 572 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). In doing so, we must always consider the statute as a whole rather than its isolated provisions. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) ("[W]e should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone.").

Section 13.001 provides the legislative policy and purpose of Chapter 13 of the water code:

(a) [Chapter 13 of the Texas Water Code] is adopted to protect the interest inherent in the rates and services of retail public utilities.

(b) The legislature finds that:

(1) retail public utilities are by definition monopolies in the areas they serve;

(2) the normal forces of competition that operate to regulate prices in a free enterprise society do not operate for the reason stated in Subdivision (1); and

(3) retail public utility rates, operations, and services are regulated by public agencies, with the objective that this regulation will operate as a substitute for competition.

(c) The purpose of [Chapter 13] is to establish a comprehensive regulatory system that is adequate to the task of regulating retail public utilities to assure rates, operations, and services that are just and reasonable to the consumers and to the retail public utilities.

9

TEX. WATER CODE ANN. § 13.001 (West, Westlaw through 2017 1st C.S.). The language in subsection 13.001(c) speaks with unmistakable clarity to the comprehensive intent of the regulation of retail public utilities under chapter 13. *City of Carrollton v. Tex. Comm'n on Envtl. Quality*, 170 S.W.3d 204, 210 (Tex. App.—Austin 2005, no pet.); *see Entergy*, 142 S.W.3d at 322–23. However, all regulatory schemes have limitations. *Oncor Elec.*, 546 S.W.3d at 139; *see, e.g.*, *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 546 (Tex. 2016) (noting that the exhaustion-of-remedies requirement "applies only to complaints that the Legislature has authorized the Commissioner to resolve").

Section 13.042 is titled "Jurisdiction of Municipality; Original and Appellate Jurisdiction of Utility Commission." TEX. WATER CODE ANN. § 13.042 (West, Westlaw through 2017 1st C.S.). It provides that the PUC "shall have exclusive original jurisdiction over water and sewer utility rates, operations, and services[3] *not* within the incorporated limits of a municipality exercising exclusive original jurisdiction over those rates, operations, and services as provided in this chapter."[4] *Id.* § 13.042(e) (emphasis added).

---

[3] Under Chapter 13 of the Texas Water Code, "services" means "any act performed, anything furnished or supplied, and any facilities or lines committed or used by a retail public utility in the performance of its duties under this chapter to its patrons, employees, other retail public utilities, as well as the interchange of facilities between two or more retail public utilities." *Id.* § 13.002(21). We assume for purposes of this opinion that the construction of a lift station, force main, and wastewater collection lines, as alleged here, are "services."

[4] "This limitation is consistent with the legislative history of public utility regulation in Texas, which represents an attempt to retain local regulation of public utilities while empowering the [PUC] to regulate regional service or service outside municipal limits." *Tara Partners, Ltd. v. City of S. Houston*, 282 S.W.3d 564, 573 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (citing *Pub. Util. Comm'n v. City of Austin*, 728 S.W.2d 907, 913 (Tex. App.—Austin 1987, writ ref'd n.r.e.)); *see City of Sherman v. Pub. Util. Comm'n*, 643 S.W.2d 681, 683 (Tex. 1983) (describing municipalities' opposition to state regulation of municipally owned utilities and explaining statutory compromise of retaining municipal regulation within a municipality's territorial boundaries and exempting municipalities from most of the statute's regulatory provisions). The *City of Sherman* and *City of Austin* courts were construing the Public Utilities Regulatory Act of 1975. *Tara Partners*, 282 S.W.3d at 573 n.9; *see City of Sherman*, 643 S.W.2d at 683; *City of Austin*, 728 S.W.2d at 912–13. The water code provisions at issue in the present case retain much of the language of that act. *Tara Partners*, 282 S.W.3d at 573 n.9.

"The governing body of a municipality by ordinance may elect to have the [PUC] exercise exclusive original jurisdiction over the utility rates, operation, and services of utilities, *within* the incorporated limits of the municipality." *Id.* § 13.042(a) (emphasis added); *see also* 16 TEX. ADMIN. CODE ANN. § 24.375(a) (West, Westlaw through 2017 1st C.S.) (Pub. Util. Comm'n of Tex., Jurisdiction of Municipality: Surrender of Jurisdiction).[5] Furthermore, the PUC "shall have exclusive appellate jurisdiction to review orders or ordinances of those municipalities as provided in this chapter." TEX. WATER CODE ANN. § 13.042(d). The water code emphasizes that section 13.042

> does not give the [PUC] power or jurisdiction to regulate or supervise the rates or service of a utility owned and operated by a municipality, directly or through a municipally owned corporation, *within its corporate limits* or to affect or limit the power, jurisdiction, or duties of a municipality that regulates land and supervises water and sewer utilities within its corporate limits, except as provided by this code.

*Id.* § 13.042(f) (emphasis added). Thus, based on the express language of section 13.042, the PUC's jurisdiction is exclusive under certain circumstances. *BCY Water*, 170 S.W.3d at 600; *see* TEX. WATER CODE ANN. § 13.042. We reiterate that there is no presumption that administrative agencies are authorized to resolve disputes and that such agencies may exercise only those powers the law, in clear and express statutory language, confers upon them. *Subaru*, 84 S.W.3d at 220; *BCY Water*, 170 S.W.3d at 601.

Based on the express language of the statute, we conclude that the circumstances set forth in chapter 13 under which the PUC has exclusive jurisdiction are not present in

---

[5] Chapter 24 of Title 16 of the Texas Administrative Code provides the PUC's substantive rules applicable to water and sewer service providers. *See* 16 TEX. ADMIN. CODE ANN. § 24.375(a) (West, Westlaw through 2017 1st C.S.) (Pub. Util. Comm'n of Tex., Jurisdiction of Municipality: Surrender of Jurisdiction).

11

the situation before us. The enjoined actions are within the City's incorporated limits, and the City has not argued or presented any evidence that it has issued an ordinance electing for the PUC to have exclusive original jurisdiction. *See* TEX. WATER CODE ANN. § 13.042(a). Accordingly, we conclude the PUC did not have exclusive jurisdiction to issue the injunction in dispute. *See BCY Water*, 170 S.W.3d at 601.

The City also cites an unpublished memorandum opinion from our sister court in Waco in support of its argument that the PUC has exclusive jurisdiction. *See City of College Station v. Wellborn Special Util. Dist.*, No. 10-04-00306-CV, 2006 WL 2067887 (Tex. App.—Waco July 26, 2006, pet. denied) (mem. op.). Similar to the case before us, the city of College Station sued the special utility district that held the CCN and sought permission to provide water services in an area covered by that CCN. *Id.* at *1. The city of College Station brought claims for "breach of contract, promissory estoppel, specific performance, and requests for a declaratory judgment, an injunction, and attorney's fees . . . ." *Id.* at *2. The Waco court noted that all of College Station's claims were "predicated on a determination that [the special utility district] allow the City [of College Station] to provide water utility service to the newly annexed area within [the special utility district's] service area." *Id.* Citing section 13.042(e), which provides that the PUC has exclusive jurisdiction over water and sewer rates, operations, and services *not* within the incorporated limits of a municipality, *see* TEX. WATER CODE ANN. § 13.042(e) (emphasis added), the Waco court concluded that, under Chapter 13 of the water code, the PUC had exclusive jurisdiction to make a determination on the service underlying the city of College Station's claims. *See College Station*, 2006 WL 206788, at *2 (citing TEX. WATER CODE ANN. §§ 13.042(e), 13.242(a), 13.255).

12

Here, unlike the city in *College Station*, the City seeks to provide sewage service to an area that has not been newly annexed and that is within its municipal limits.[6] Accordingly, we find *College Station* distinguishable and inapplicable, and we reject the City's argument that the PUC has exclusive jurisdiction over the injunctive claim brought by Agua SUD.

We overrule the City's third issue.

### III. TEMPORARY INJUNCTION

By its first issue, the City argues that the trial court abused its discretion when it granted Agua SUD's request for a temporary injunction.

### A. Standard of Review & Applicable Law

We review a trial court's decision to grant a temporary injunction for an abuse of discretion. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A trial court abuses its discretion if it rules in an arbitrary manner or without reference to guiding rules and principles. *Id.* at 211; *see Sargeant v. Al Saleh*, 512 S.W.3d 399, 409 (Tex. App.—Corpus Christi 2016, orig. proceeding). A trial court also abuses its discretion when it grants a temporary injunction if it misapplies the law to the established facts. *Sargeant*, 512 S.W.3d at 409.

---

[6] Based on the authority cited for its conclusion that the PUC had original and exclusive jurisdiction, the Waco court treated the annexed lands by the city of College Station as not being within the incorporated limits of College Station for the purpose of chapter 13. *See City of College Station v. Wellborn Special Util. Dist.*, No. 10-04-00306-CV, 2006 WL 2067887, *2 (Tex. App.—Waco July 26, 2006, pet. denied) (mem. op.) (citing TEX. WATER CODE ANN. §§ 13.042(e), 13.242(a), 13.255 (West, Westlaw through 2017 1st C.S.)). In its analysis, the Waco court noted "when an area that is already being provided retail water or sewer utility by a retail public utility is annexed by a municipality, the municipality may not provide water or sewer service to the annexed area without a" CCN. *Id.* at *1 (citing TEX. WATER CODE ANN. § 13.247(a) (West, Westlaw through 2017 1st C.S.). The Waco court also cited the sections of the water code that provide the procedure a municipality must follow to provide water or sewer utility services to an area annexed when that area was already serviced by another entity holding a CCN. *Id.* at *1–2; *see* TEX. WATER CODE ANN. §§ 13.254, 13.255 (West, Westlaw through 2017 1st C.S.). We pass no opinion on whether lands annexed by a municipality are considered to be within the municipality's incorporated limits for the purpose of chapter 13 of the Texas Water Code.

"A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Id.* (citing *Butnaru*, 84 S.W.3d at 204). The purpose of a temporary injunction is to preserve the status quo of the subject matter of the litigation until a trial on the merits. *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 555 (Tex. 2016); *Butnaru*, 84 S.W.3d at 204. The status quo is "the last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding).

To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204; *Sargeant*, 512 S.W.3d at 408–09; *see Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968) (noting that "[t]o be entitled to the writ when the only relief sought on final trial is injunctive, the applicant must show a probable right on final hearing to a permanent injunction."). The applicant bears the burden of production to offer some evidence on each of these elements. *Sargeant*, 512 S.W.3d at 409. The applicant is not required to establish that it will ultimately prevail at trial, only that it is entitled to preservation of the status quo pending trial on the merits. *Id.* We review the evidence submitted to the trial court in the light most favorable to its ruling, drawing all legitimate inferences from the evidence, and deferring to the trial court's resolution of conflicting evidence. *Butnaru*, 84 S.W.3d at 204; *Sargeant*, 512 S.W.3d at 410.

**B.    Analysis**

**1.  Cause of Action or Permanent Injunctive Relief**

14

The City first argues that the trial court abused its discretion when it granted Agua SUD's request for a temporary injunction because Agua SUD failed to plead a cause of action. As a prerequisite for injunctive relief, the applicant must plead for some form of permanent relief—either a cause of action (e.g., a suit for damages) or, if injunctive relief is the only relief sought, a permanent injunction. *See Butnaru*, 84 S.W.3d at 204; *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993); *Sun Oil*, 424 S.W.2d at 218.

Here, Agua SUD pleaded for a temporary restraining order, a temporary injunction, and a permanent injunction. Because Agua SUD pleaded for a permanent injunction, the prerequisite that the applicant plead for some form of permanent relief or cause of action is satisfied. *See Butnaru*, 84 S.W.3d at 204; *Walling*, 863 S.W.2d at 57; *Sun Oil*, 424 S.W.2d at 218. Accordingly, we reject the City's argument that the trial court abused its discretion because Agua SUD failed to plead a cause of action.

### 2. Probable Right to Relief

The applicant must also show it has a probable right to the relief it seeks on final hearing. *Butnaru*, 84 S.W.3d at 204; *Walling*, 863 S.W.2d at 58; *Sun Oil Co.*, 424 S.W.2d at 218. That is, the applicant must prove it is likely to succeed on the merits of its lawsuit. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 686 (Tex. 1990); *Sw. Bell Tel. Co. v. Pub. Util. Comm'n*, 571 S.W.2d 503, 506 (Tex. 1978). It is not necessary for the applicant to prove it will ultimately prevail. *Walling*, 863 S.W.2d at 58; *Sun Oil*, 424 S.W.2d at 218.

Here, it is undisputed that Agua SUD holds the CCN that covers the geographical area in which the City began the construction of wastewater utility improvements. As noted earlier, a retail public utility, like the City, "may not may furnish, make available, render, or extend . . . sewer utility service to any area to which . . . sewer utility service is

15

being lawfully furnished by another retail public utility without first having obtained a [CCN] that includes the area . . . ." TEX. WATER CODE ANN. § 13.242(a). The unrefuted evidence at the hearing before the trial court established that the City had began construction of improvements to provide wastewater utility services to an area covered by Agua SUD's CCN. The City did not present any evidence of a legal right to such construction. Thus, Agua SUD proved it is likely to succeed on the merits of its counterclaim.

### 3. Probable Injury

Finally, the City argues that Agua SUD did not establish there was a probable, imminent, and irreparable injury to Agua SUD. The probable injury element requires a showing that the harm is imminent, the injury would be irreparable, and the applicant has no other adequate legal remedy. *Harbor Perfusion, Inc. v. Floyd*, 45 S.W.3d 713, 716 (Tex. App.—Corpus Christi 2001, no pet.).

#### a. Imminent Harm

At the hearing before the trial court, Agua SUD presented testimony from its general manager, Jorge Saenz. According to Saenz, the engineer for Agua SUD determined that some of the wastewater lines and facilities the City planned to build would be useless to Agua SUD. In particular, Saenz explained the lift station and force main the City sought to construct would be of no use to Agua SUD. Saenz explained the City began the construction of this project before they had even submitted an application to Agua SUD, and the City brought a lawsuit to force Agua SUD to approve its ongoing construction.

As to the imminent harm requirement, an injunction will not be issued unless it is shown that the respondent will otherwise engage in the activity enjoined. *State v.*

16

*Morales*, 869 S.W.2d 94, 946 (Tex. 1994); *Frey v. DeCordova Bend Estates Owners Ass'n*, 647 S.W.2d 246, 248 (Tex. 1983). Fear or apprehension of the possibility of injury is not sufficient; the applicant must prove the respondent has attempted or intends to harm the applicant. *Jones v. Jefferson Cty.*, 15 S.W.3d 206, 213 (Tex. App.—Texarkana 2000, pet. denied). Here, there was evidence before the trial court that established that the City had already began construction and that it intended to continue with the construction that would harm Agua SUD. The lift station and force main the City wants to construct will serve no purpose to Agua, and the injury would continue to take place without the temporary injunction. Thus, there was evidence before the trial court that the harm was imminent. *See State v. Morales*, 869 S.W.2d 941, 946 (Tex. 1994); *Frey v. DeCordova Bend Estates Owners Ass'n*, 647 S.W.2d 246, 248 (Tex. 1983); *Jones*, 15 S.W.3d at 213.

### b. Irreparable Injury

An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by a certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204; *Sargeant*, 512 S.W.3d at 409; *see Canteen Corp. v. Rep. of Tex. Props., Inc.*, 773 S.W.2d 398, 401 (Tex. App.—Dallas 1989, no writ).

Saenz provided the following relevant testimony:

| [Agua SUD's counsel]: | What would be the harm to Agua SUD and its constituents if the force main and the lift station are installed and placed underground? |
|---|---|
| [Saenz]: | This is a lift station and a force main that we feel will never be used. It will be in the ground and it will become property of Agua, which we will never use and it would be a detriment to the system. Number Two, we feel it sets a bad precedent for the district, which would—if this were to be allowed, that means any developer |

17

or any city would be allowed to put in a system that we would be forced to accept even though it's not in compliance or it's not conforming to our overall plan. So we feel that we would not be allowed to have any say so, which we have that right to do so.

. . . .

[Agua SUD's counsel]: Once the lift station and these force mains are put underground, buried underground, does the district have—do they have the responsibility to maintain this equipment?

[Saenz]: Yes, yes, sir.

[Agua SUD's counsel]: And will that be an additional expense and burden to the district?

[Saenz]: Yes, because we're the only ones that have the right to operate, maintain the water and sewer system within the CCN.

. . . .

[Agua SUD's counsel]: And so in addition to the harm that would be caused to the citizens of Palmview, what about the cost of maintaining all these lines and maintaining this—are there costs associated— once they're put there, there are costs that Agua SUD will have to incur to maintain responsibility for this lift station?

[Saenz]: Yes. We have maintenance costs, electrical costs to have it on, if we were to accept it, and then the cost of decommissioning it as well. Our understanding is this line is going over a canal that—an irrigation district canal, which obviously is one that we have not approved either.

. . . .

[Agua SUD's counsel]: Mr. Saenz, do you believe Agua will suffer irreparable harm if construction is not halted by the City of Palmview on this project?

[Saenz]: Yes, I do.

18

| [Agua SUD's counsel]: | And are you asking the Court to halt construction on this project? |
|---|---|
| [Saenz]: | Yes, we are. |

Saenz's testimony established that Agua SUD would suffer damages from the time and money it would take to maintain the lift station and force main built by the City, because Agua SUD would be responsible for them as the holder of the CCN.  These are damages that could continue for an indefinite time.  Furthermore, Agua SUD's CCN would lose its value and purpose—i.e., cities and developers would be able to force Agua SUD to accept a system without Agua SUD's opinion on the matter.  *See* TEX. WATER CODE ANN. §§ 13.242(a); 13.247(a) (West, Westlaw through 2017 1st C.S.).  This is irreparable and not quantifiable and cannot be remedied by damages.  *See, e.g.*, *Intercont. Terminals Co. v. Vopa N. Am., Inc.*, 354 S.W.3d 887, 895 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (concluding that injury was irreparable because plaintiff's damages were not presently ascertainable or easily calculated); *Wright v. Sport Sup. Grp.*, 137 S.W.3d 289, 294 (Tex. App.—Beaumont 2004, no pet.) (same).  Thus, there was evidence before the trial court that the harm cannot be measured and would be irreparable.  *Butnaru*, 84 S.W.3d at 204; *Sargeant*, 512 S.W.3d at 409; *see Canteen Corp.*, 773 S.W.2d at 401.

### c.  Inadequate Remedy at Law

The requirements of an irreparable injury and an inadequate remedy at law are intertwined under Texas case law.  *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 294 (Tex. App.—Beaumont 2004, no pet.).  "An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief."  *Intercont. Terminals*, 354 S.W.3d at 895.  Thus, if damages do not provide as complete, practical, and efficient a remedy as may be had by injunctive relief, the trial

19

court does not err in granting temporary injunction so long as the other elements of injunctive relief are satisfied. *Id.* Here, evidence was presented that supported the trial court's conclusion that the actions enjoined would cause irreparable injury to Agua SUD and that at least some of the harm offered by Agua SUD cannot be remedied with the recovery of money. There are also aspects of the damages Agua SUD would incur that cannot be easily ascertained. Therefore, we conclude that there is evidence in the record to support the trial court's conclusion that Agua SUD lacks an adequate remedy at law. *See id.*

### 4. Summary

Under an abuse of discretion standard, a court of appeals cannot overrule a trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *Butnaru*, 84 S.W.3d at 211. Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court did not abuse its discretion when it granted Agua SUD's temporary injunction. *See Butnaru*, 84 S.W.3d at 204; *Sargeant*, 512 S.W.3d at 410.

We overrule the City's first issue.

### IV. CONCLUSION

We affirm the trial court's order.

DORI CONTRERAS
Chief Justice

Delivered and filed the
7th day of March, 2019.

20